**Case No. 23-1125**

IN THE

# United States Court of Appeals

## FOR THE TENTH CIRCUIT

◆◆

FIVE POINTS MANAGEMENT GROUP, INC.,

*Plaintiff-Appellant,*

—v.—

CAMPAIGN, INC., a Delaware Corporation; BRADLEY SEWELL, an individual,

*Defendants,*

HARTMAN ART STUDIOS, LLC,

*Garnishee-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
HONORABLE R. BROOKE JACKSON
D.C. NO. 1:20-CV-02599-RBJ

## BRIEF FOR PLAINTIFF-APPELLANT

PETER W. ITO
ITO LAW GROUP LLC
1550 Larimer Street
Denver, Colorado 80202
(720) 281-5294

*Attorneys for Plaintiff-Appellant*

July 12, 2023

**ORAL ARGUMENT NOT REQUESTED**

## CORPORATE DISCLOSURE STATEMENT

Consistent with Federal Rule of Appellate Procedure 26.1,

Plaintiff/Appellant Five Points Management Group, Inc. states that Five Points

Management Group, Inc. is a corporation organized under the laws of the State of

California, and that it neither issues stock nor has a parent corporation.

# **TABLE OF CONTENTS**

PAGE

CORPORATE DISCLOSURE STATEMENT ................................... i

TABLE OF AUTHORITIES ................................................... iv

PRIOR OR RELATED APPEALS ............................................. 1

JURISDICTIONAL STATEMENT ............................................ 1

STATEMENT OF ISSUES ..................................................... 1

STATEMENT OF THE CASE ................................................. 2

SUMMARY OF THE ARGUMENT ........................................... 6

ARGUMENT ................................................................... 8

    I.    Standard of Review .................................................. 8

    II.   The District Court Erred In Deciding That The Lease Was Not A Residential Lease ............................................... 9

    III.  The District Court Erred In Deciding that Colorado's Security Deposit Act Did Not Apply To The Lease ............... 13

    IV.  The District Court Erred In Deciding That Plaintiff Was Not Entitled To The Security Deposit ............................. 18

    V.   The District Court Erred In Deciding That Plaintiff Was Not Entitled To Treble Damages ................................... 19

        A. Plaintiff Has Shown That the Security Deposit Act Applies And That Garnishee Violated The Act ................. 19

        B. Garnishee's Obligation To Pay Treble Damages To Campaign Was Ripe .............................................. 20

        C. Campaign's Right To Treble Damages Is A Chose In Action ............................................................. 21

PAGE(S)

D. Plaintiff Has Standing To Garnish Campaign's Right To Treble Damages ................................................. 25

CONCLUSION ........................................................ 28

STATEMENT REGARDING ORAL ARGUMENT ......................... 30

ADDENDA ............................................................ 001

Order Regarding Traverse ........................................ Addenda 002

C.R.S. § 38-12-103 .............................................. Addenda 011

C.R.S. § 38-12-502 .............................................. Addenda 013

C.R.S. § 2-4-401 ................................................ Addenda 015

Colo. R. Civ. P. 103 ............................................ Addenda 019

# TABLE OF AUTHORITIES

PAGE(S)

**Cases**

*AA Wholesale Storage, LLC v. Swinyard*,
 488 P.3d 1213 (Colo. 2021) .................................. 18, 25, 26, 27

*Carlson v. McCoy*,
 566 P.2d 1073 (Colo. 1977) ............................................... 21

*Dorman v. Petrol Aspen, Inc.*,
 914 P.2d 909 (Colo. 1996) ................................................. 10

*Guarantee Trust Life Ins. Co. v. The Estate of Casper*,
 418 P.3d 1163 (Colo. 2018) ......................................... 23, 24

*Kruse v. McKenna*,
 178 P.3d 1198 (Colo. 2008) ............................................... 23

*Mann v. Reynolds*,
 46 F.3d 1055 (10th Cir. 1995) ............................................. 8

*Mishkin v. Young*,
 107 P.2d 393 (Colo. 2005) ....................................... 5, 21, 28

*Mishkin v. Young*,
 198 P.3d 1269 (Colo. App. 2008) ....................................... 24

*Rooftop Restoration, Inc. v. American Family Mutual Insurance Co.*,
 418 P.3d 1173 (Colo. 2018) ............................................... 22

*United States v. Clayton*,
 613 F.3d 592 (5th Cir. 2010) ............................................... 8

**Statutes**

C.R.S. § 2-4-401(8) ....................................................... 15, 16

C.R.S. § 38-12-103 ("Colorado's Security Deposit Act") .............. *passim*

C.R.S. § 38-12-103(1) ..................................................... *passim*

C.R.S. § 38-12-103(2) ......................................................... 19

C.R.S. § 38-12-103(3) ......................................................... 20

C.R.S. § 38-12-103(3)(a) ........................................... 21, 22, 27, 28

iv

PAGE(S)

C.R.S. § 38-12-502(3) ......................................................... 16

C.R.S. § 38-12-502(9) ......................................................... 15

28 U.S.C. § 1291 ................................................................. 1

28 U.S.C. § 1332(a)(1) ......................................................... 1

**Rules**

Col. R. Civ. P. 1(a) .............................................................. 27

Col. R. Civ. P. 69(g) ....................................................... 25, 26

Col. R. Civ. P. 103 ............................................................. 20

Col. R. Civ. P. 103 § 4 ...................................................... 8, 20

Col. R. Civ. P. 103 § 4(a) ................................................ 20, 25

Col. R. Civ. P. 103 § 6 ......................................................... 8

Col. R. Civ. P. 103 § 8(b)(3)(A) ........................................... 27

## PRIOR OR RELATED APPEALS

There are no prior appeals related to the action in the district court. There are no related federal appeals.

## JURISDICTIONAL STATEMENT

The district court had diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because: (1) Plaintiff Five Points Management Group, Inc. is a California corporation and its principal place of business is in California; (2) defendant Campaign, Inc. is a Delaware corporation and its principal place of business is in Colorado; (3) defendant Bradley Sewell is domiciled in the State of Colorado; and (4) the amount in controversy exceeded $75,000, exclusive of interest and costs. (App. Vol. I at A79(¶2))

This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291. The district court entered its Order Regarding Traverse on March 16, 2023. (App. Vol. II at A460-A468) Plaintiff/Appellant Five Points Management Group, Inc. filed its notice of appeal on April 17, 2023. (App. Vol. II at A469-A481)

Appellee/Respondent Hartman Art Studios, LLC, is a Colorado limited liability company and its sole member is Carl Hartman. (App. Vol. II at A252(¶2))

## STATEMENT OF ISSUES

1.    Did the district court err when it found that the lease between Campaign, Inc. and Hartman Art Studios, LLC was a commercial lease, not a residential lease?

2.      Did the district court err when it found that C.R.S. § 38-12-103(1) did not apply to the Lease.

3.      Did the district court err when it found that Plaintiff was not entitled to the return of the security deposit?

4.      Did the district court err when it found that Plaintiff was not entitled to treble damages?

## STATEMENT OF THE CASE

This appeal arises from the district court's denial of Five Points Management Group, Inc.'s ("Plaintiff") attempt to garnish a security deposit as part of its post-judgment collection efforts.

On August 20, 2021, the district court entered an Order Granting Summary Judgment in favor of Plaintiff.  (App. Vol. I at A92-A112)  Thereafter, the district court entered a judgment and an amended judgment (collectively, the "Judgment") in favor of Plaintiff and against defendants Campaign, Inc. ("Campaign") and Bradley Sewell ("Sewell").  (App. Vol. I at A113-114; A115-116)  Judgment was entered against Campaign and Sewell, jointly and severally, in the amount of $2,219,276,52.  (App. Vol. I at A115)

Plaintiff thereafter commenced its efforts to collect on the Judgment.  Those efforts included an attempt to garnish a $27,000 security deposit that judgment

debtor Campaign had posted in favor of its landlord, Hartman Art Studios LLC ("Garnishee"). (App. Vol. I at A117-A118) Pursuant to a lease agreement ("Lease"), Campaign posted the security deposit. (App. Vol. I at A154(¶10)) Under the Lease, Garnishee agreed to return the security deposit or the portion thereof not previously applied, ***together with a statement***, to Campaign within sixty (60) days after expiration of the Lease. (App. Vol. I at A154(¶12)) The district court accepted Garnishee's statement that the Lease was terminated on or about December 18, 2020, when Campaign was purportedly dissolved. (App. Vol. II at A474) Garnishee then re-leased the property to Texture Supply, Inc. ("Texture Supply"). (App. Vol. I at A168-A184) Sewell, by and through his trust, is the sole owner of Texture Supply. (App. Vol. I at A198-A199 (Tr. 35:24-36:11))

On April 26, 2022, Plaintiff deposed Hartman, who is the sole member of Garnishee. (App. Vol. I at A206) Hartman testified that he couldn't recall if judgment debtor Campaign had posted the security deposit. (App. Vol. I at A220 (Tr. 92:23-25)) When asked where the security deposit was at that time (i.e., April 26, 2022), Hartman testified that he did not know. (App. Vol. I at A221 (Tr. 137:7-10)) Asked if it was returned to Campaign, Hartman replied that he did not know. (App. Vol. I at A221 (Tr. 137:11-12)) When asked who would know, Hartman flippantly responded: "God." (App. Vol. I at A221 (Tr. 137:13-14))

Plaintiff deposed judgment debtor Swell the following day (i.e.,  April 27, 2022). (App. Vol. I at A186)  Sewell testified under oath that Garnishee failed to return the security deposit. (App. Vol. I at A202 (Tr. 126:7-10)) He further testified that the current lessee of the property, Texture Supply, "hasn't yet posted a security deposit." (App. Vol. I at A202 (Tr. 126:11-18) As to whether Garnishee had set off the security deposit against unpaid rent, Sewell testified it was his "assumption that the security deposit was kept because the rent was owed to the landlord from Campaign, Inc." (App. Vol. I at A203 (Tr. 127:10-21)) When asked if the Garnishee ever provided a written statement to the judgment debtor Campaign accounting for the security deposit, Sewell testified that the Garnishee did not give any written notice regarding the intent to set off the security deposit against unpaid rent. (App. Vol. I at A203-A204 (Tr. 127:22-128:4))

Because Garnishee failed to give the written notice of its intent to retain the security deposit as required by C.R.S. § 38-12-103(1) ("Security Deposit Act" or "Act"), Plaintiff commenced its efforts to garnish the security deposit.  On May 18, 2022, the district court authorized a Writ of Garnishment—Judgment Debtor Other Than Natural Person ("Garnishment") to be issued to Garnishee.  (App. Vol. I at A117-118) That same day, Plaintiff served the Garnishment on counsel for Garnishee, who agreed to accept service.  (App. Vol. I at A119) By agreement, the parties agreed that Garnishee would have to and including June 15, 2022 to answer

the Garnishment.  (App. Vol. I at A146 (¶4))  On June 13, 2022, Garnishee filed its

Answer ("Answer") to the Garnishment. (App. Vol. I at A120-A121)

The day after the Answer was filed, Plaintiff requested that Garnishee

provide (1) the date the setoff occurred and (2) a copy of the written statement

required by C.R.S. § 38-12-103(1).[1]  (App. Vol. I at A222)  Garnishee responded:

"I don't believe there was a formal notice under CRS 38-12-103, nor does there

need to be if the parties to the lease are in agreement, which I understand to be the

case here.  I don't know exactly when the agreement was made.  I suspect Brad

Sewell will have the best recollection of that."  (App. Vol. I at A227)

Believing Garnishee's Answer to be false and erroneous, Plaintiff filed its

Traverse on July 1, 2022.  (App. Vol. I at A122-A233) Garnishee filed its response

on February 6, 2023.  (App. Vol. II at A237-A290)  Plaintiff filed its reply in

support of the Traverse on February 13, 2023.[2]  (App. Vol. II at A291-A459)

On March 16, 2023, the district court issued its Order Regarding Traverse

---

[1] Under Colorado law, Garnishee had 60 days after judgment debtor Campaign's surrender of the premises to either return the Security Deposit or account for its retention. (Addenda 011-012 (C.R.S. § 38-12-103(1)); *see also Mishkin v. Young*, 107 P.2d 393, 395  (Colo. 2005) ("The Act requires a landlord to either return or account for a security deposit within one month of the tenant's surrender of the property unless the lease provides for a longer period not to exceed sixty days.")
[2] Although the district court did not strike the reply filed by Plaintiff, it refused to read beyond page 5 stating that it was "so far in excess of this Court's practice standard page limit that I have disregarded everything beyond the first five pages." (App. Vol. II at A465)

("Order").  (App. Vol. II at A460-A481)  In its Order, the district court found that

Colorado's Security Deposit Act did not apply because: (1) the Lease was not a

residential lease but instead was a commercial lease; (2) that even if the Security

Deposit Act applied Garnishee was entitled to set off the security deposit against

Campaign's debt for nonpayment of rent; and (3) Plaintiff's attempt to garnish

Garnishee's purported obligation to pay treble damages to Campaign fails because

(i) the Security Deposit Act does not apply to the Lease, (ii) even if the Security

Deposit Act applied to the Lease it was not violated, (iii) Plaintiff failed to

demonstrate that Garnishee's purported obligation to pay treble damages to

Campaign was ripe, (iv) Garnishee's purported obligation to pay treble damages to

Campaign was not a chose in action subject to garnishment, and (v) Plaintiff

lacked standing to garnish it. (App. Vol. II at A465-A468)

Plaintiff timely appealed the Order.  (App. Vol. II at A469-A481)

### SUMMARY OF THE ARGUMENT

The district court abused its discretion and, therefore, erred when it

concluded, without any analysis of the Lease and without considering the intent of

the parties, that the Lease was an unambiguous commercial lease. (App. Vol. II at

A465)  First, the terms of the Lease govern its construction.  Second, contrary to

the district court's statement, the Lease is ambiguous.  Despite the fact that the

Lease states that it is a commercial lease (App. Vol I at A152 (introductory

paragraph)), it also states that the property was to be used as a residence. (App. Vol I at A155 (¶17)) Given this ambiguity, the district court was required to look beyond the four-corners of the Lease to determine the intent of the parties. The relevant extraneous evidence clearly indicates that the parties intended the property to be used as a residence.

The district court further erred when it made the erroneous legal conclusion that the Security Deposit Act only applies to "and an individual tenant or tenants," not a corporate tenant. (App. Vol. II at A467) This erroneous conclusion of law ignores the clear and unambiguous language of Act and, as it relates to the Act's legislative intent, ignores the disparity that existed between Garnishee and Campaign.

The district court abused its discretion when it made the erroneous legal conclusion that Garnishee and Campaign could reach an oral agreement that Garnishee would retain the security deposit as a set off against Campaign's unpaid rent. (App. Vol. II at A465) Even if the set off occurred, it did not excuse Garnishee's obligation under the Security Deposit Act to deliver a written statement accounting for the security deposit. The statutory requirement that Garnishee issue a written statement is mandatory, not discretionary. (Addenda 011 (C.R.S. § 38-12-103(1) ("…the landlord *shall* provide the tenant with a written statement…") (emphasis added)) Garnishee had 60 days from the termination of

7

the Lease to deliver a written statement to Campaign. *Id.* It is undisputed that no written statement complying with C.R.S. § 38-12-103(1) was ever delivered by Garnishee to Campaign.

Finally, the district court abused its discretion when it made the erroneous legal conclusion that Plaintiff was not entitled to treble damages. (App. Vol. II at A467) Plaintiff has established the following: (1) the Lease is a residential lease; (2) as a residential lease the Security Deposit Act applies; (3) Garnishee violated the Security Deposit Act by failing to deliver a written statement as required by C.R.S. § 38-12-103(1); (4) Garnishee's obligation to pay treble damages to Campaign was ripe; (5) Campaign's right to treble damages was a chose in action that could be garnished pursuant to Colorado Rule of Civil Procedure 103, Section 4; and (6) Plaintiff had standing to garnish it.

## ARGUMENT

### I.    Standard of Review

This Court reviews a garnishment order for abuse of discretion. *United States v. Clayton*, 613 F.3d 592, 595 (5th Cir. 2010). A court abuses its discretion when it bases its decision on an erroneous conclusion of law or when there is no rational basis in evidence for its ruling. *Mann v. Reynolds*, 46 F.3d 1055, 1062 (10th Cir. 1995).

8

**II.     The District Court Erred In Deciding That The Lease Was Not A Residential Lease.**

The district court correctly observed that the Security Deposit Act applies only to residential leases.  (App. Vol. II at A467 ("Thus, the statute applies, by the plain meaning of its terms, to residential leases between a landlord and an individual tenant or tenants."))  However, the district court erred when it determined that the Lease was a commercial lease.  (App. Vol. II at 467 ("It does not apply to a commercial lease between businesses."))  There is no rational basis in evidence for the district court's conclusion that the Lease was a commercial lease.  Indeed, the Order is devoid of any factual analysis that supports the district court's erroneous factual conclusion.

The issue of whether the Lease is a commercial versus a residential lease is governed by the express terms of the Lease.  The district court apparently believed the terms of the Lease to be unambiguous.  (App. Vol. II at A465-A466 ("Indeed, Hartford [sic] had the right to apply the security deposit to the unpaid rent under the unambiguous terms of the lease agreement between Campaign and Hartman."))  That evidentiary conclusion is erroneous.

In one part, the Lease states that it is a "Commercial Lease." (App. Vol. I at A152 (introductory paragraph)).  However, in another part, the Lease states that "[t]he Premises shall be used solely for a **furniture design showroom and residence**. (emphasis in original)"  (App. Vol. I. at A155 (¶17))  Thus, an

ambiguity exists as to whether Lease is a commercial or a residential lease.  Given

this ambiguity, the district court was required to go beyond the four-corners of the

Lease to determine the intent of the parties.  *Dorman v. Petrol Aspen, Inc.*, 914

P.2d 909, 911-12 (Colo. 1996) ("[W]ritten documents containing ambiguities or

unclear language must be construed in accordance with the intent of the parties,

and relevant extraneous evidence may be considered to resolve the factual question

of the parties' intent.")

Sewell choose the property because it was a "live-work space."  (App. Vol.

The intent of the parties, as evidenced by the sworn testimony of Sewell and

Hartman, clearly evidence that the property was both a residence and a place where

Sewell would conduct Campaign's business.

Sewell choose the property because it was a "live-work space."  (App. Vol.

II at A434 (Tr. 18:15-17))  As Sewell testified, the property was "[s]omewhere I

could work, I could do my profession, work on my hobbies, work on a business,

and also reside."  (App. Vol. II at A434 (Tr. 18:18-22))  The property met both of

Sewell's requirements to work and reside.  (App. Vol. II at A434 (Tr. 18:23-25))

Sewell further testified that Campaign did not make its first rent payment

until September 2020 as the property could not be used as a residence until a

certificate of occupancy ("CO") was issued.  (App. Vol. II at A437-A438 (Tr.

112:7-113:20))  Sewell further testified that he could not sleep at the property until

a CO was issued and that once the CO was issued he commenced residing at the

property.  (App. Vol. II at A439 (Tr. 114:3-11))  Indeed, Sewell acknowledged that

Garnishee did not charge Campaign any rent until the CO was issued because

"Carl, you know, he didn't feel that it was right to try to collect rent when maybe

there wasn't a certificate of occupancy or I wasn't fully utilizing space, you

know…I wasn't living there, you know.  I was staying somewhere else."  (App.

Vol. II at A437-A438 (Tr. 112:16-113:20)

During Hartman's deposition, he confirmed that Sewell could not move into

the property until September 2020 when the CO was obtained. (App. Vol. II at

A455-A456 (Tr. 131:13-132:14))  While under oath, Hartman made clear that

although the Lease was dated May 1, 2020, that the property was not ready for

Sewell to reside there until a CO was issued:

> Q.     Well, you testified—when you say you didn't have
> the CO, you mean the Certificate of Occupancy? Is
> that what you're referring to?
>
> A.     Yes, the City of Denver.  I wasn't able to get the
> building finished, all the sprinklers, until they gave
> me the CO.
>
> Q.     And on what date was the CO issued?
>
> A.     I don't know.  I don't recall.  But you've got this
> information.  I don't know.
>
> Q.     Well, was it—
>
> A.     September, but I—'21[3], I guess.

---

[3] This should be 2020, not 2021.

Q.     Well, then how is it that you were able to enter into a lease agreement with Campaign on May 1, 2020, if the CO wasn't issued until September of 2021.[4]

A.     I told you maybe three times that the building was supposed to be finished when I leased it to him.  It didn't get finished until I go a CO that he could move in from the City.

Q.     Well, what's your understanding?  Without a CO, was anybody able to occupy that property?

A.     You certainly should know that you have to have a CO before you can occupy a property.  You have to have sprinklers and—yeah, then the answer is— I had—

Q.     Well—

A.     I hadn't gotten the CO.

(App. Vol. II at A455-A456 (Tr. 131:13-132:14))

As further evidence that the parties intended the lease to be a residential lease, Sewell testified that he continued to "live" at the property even after Texture Supply entered into a lease with Garnishee:  "I never left the premises.  I lived there. …The principal, me, I still lived there, and I had an office there.  Texture Supply had an office there." (App. Vol. II at A440-A441 (Tr. 119:23-120:14))

Finally, extrinsic evidence shows that Garnishee never intended the Lease to be a commercial lease.  Garnishee never required Campaign to complete a lease

_____

[4] This should be 2020, not 2021.

12

application.  (App. Vol. II at A435 (Tr. 21:16-17))  Campaign never provided any

financial statements or alike to Garnishee evidencing its financial ability to

perform.  (App. Vol. II at A435 (Tr. 21:18-25))  According to Sewell, no due

diligence was ever conducted by Garnishee regarding Campaign's financial ability

to perform.  (App. Vol. II at A436 (Tr. 22:1-6))

When asked if Garnishee performed any due diligence regarding

Campaign's ability to perform under the Lease, Hartman stated there was no due

diligence.  (App. Vol. II at A454 (Tr. 98:11-17))   When asked what he did to

determine if Campaign was a creditworthy tenant, Harman did not know.  (App.

Vol. II at A454 (Tr. 98:7-10))

By ignoring both the express terms of the Lease and the intent of the parties,

the district court's finding that the Lease was a commercial lease has no rational

basis in evidence.  For these reasons, Plaintiff respectfully requests that this Court

reverse the district court and find that the Lease is a residential lease.

## III.  The District Court Erred In Deciding that Colorado's Security Deposit Act Did Not Apply To The Lease.

The district court abused its discretion when it made the erroneous legal

conclusion that the Lease was not a residential lease and, therefore, the Security

Deposit Act did not apply.  The district court reached this erroneous legal

conclusion with the following statement:

13

> However, the term "security deposit" means "any advance or deposit of money, regardless of its denomination, the primary function of which is to secure the performance of a rental agreement for a residential premises or any part of a residential premises." Colo. Rev. Stat. § 38-12-102(6). "Residential premises" means " a dwelling unit, the structure of which the unit is a part, and the common areas." *Id.* § 38-12-502(8). "Dwelling unit" is "a structure or the part of a structure that is used as a home, residence, or sleeping unit by a tenant." *Id.* § 38-12-502(3). The term "tenant" is defined as "a person entitled under a rental agreement to occupy a dwelling unit to the exclusion of others." Colo. Rev. Stat. § 38-12-502(9).
>
> Thus, the statute applies, by the plain meaning of the terms, to residential leases between a landlord and an individual tenant or tenants.  It does not apply to a commercial lease between businesses.

(App. Vol. II at A466-A467)

Garnishee proffered a nearly identical argument in its Response::

> The Security Deposit[s] Act—the sole basis for Plaintiff's garnishment action—has no application to the Lease between Hartman Art Studios and Campaign. Campaign, the tenant under the Lease, is not a "person." As a corporation, Campaign cannot sleep, and therefore has no "sleeping place."  Nor does a corporation have a "home" or a "residence."  Ultimately, under the definitions of the Act, the Premises is neither a "residential premises" nor a "dwelling unit"; Campaign was not a "tenant"; and the $27,000 security deposit was never a "security deposit."

(App. Vol. II at A245)

Like Garnishee, the district court ignored the plain, unambiguous language of the Act, the terms of the Lease and the purpose of the Act.

14

First, the district court erroneously concluded that the Act only applies to leases between a landlord "and an individual tenant or tenants." (App. Vol. II at A467)  The district court failed to cite to any case law in support of this conclusion.  Plaintiff assumes, because the district court offered no explanation or analysis for this interpretation, that the district court adopted Garnishee's interpretation of the term "person": The term "person" can only apply "to a living, breathing tenant." (App. Vol. II at A244) ("In other words, the Act applies only to what is commonly understood to be a residential lease—the renting of a residence (be it a housed, an apartment, or any other home) by a landlord to a living, breathing tenant.")

However, the Security Deposit Act does not exclude a corporation from being a "person" under the Security Deposit Act. Under Act, a "tenant" is defined as "a person entitled under a rental agreement to occupy a dwelling unit to the exclusion of others." (Addenda 014) (C.R.S. § 38-12-502(9))  Nowhere in the Act is the term "person" defined to mean an individual.  Indeed, the term "person" is nowhere defined in the Act.

However, C.R.S. § 2-4-401(8), which applies "to every statute, unless the context otherwise requires," defines the term "person" as "any individual, **corporation**, government or governmental subdivision or agency, business trust, estate, trust, limited liability company, partnership, association, or other legal

15

entity. (emphasis added)"  (Addenda 017 (C.R.S. § 2-4-401(8))  Campaign is a

Delaware corporation (App. Vol. I at A79(¶2)) and, therefore, is a "person" under

the Security Deposit Act.

Second, the definition of "dwelling unit" is not nearly as narrow as the

district court and Garnishee suggest.  Garnishee's sole argument before the district

court was that the property cannot be a "dwelling unit" because "Campaign cannot

sleep, and therefore has no 'sleeping place.'" (App. Vol. II at A245)  However, the

definition of "dwelling unit" includes more than just a "sleeping place."  A

"dwelling unit" also includes "a structure or the ***part of a structure*** that is used as

a…***residence***…. (emphasis added)" (Addenda 013 (C.R.S. § 38-12-502(3))  By its

express terms, the property qualifies as a "dwelling unit" as the Lease expressly

states that "[t]he Premises shall be used solely for a **<u>furniture design showroom,</u>**

**<u>and residence</u>**…. (emphasis in original)" (App. Vol. I at A155 (¶17))  Further, the

undisputed evidence in the form of the sworn testimony of Sewell and Hartman

was that Sewell used part of the property as his residence.  (App. Vol. II at A434

(Tr. 18:15-17; 18:18-22; 18:23-25); A437-A438 (Tr. 112:7-113:20); A439 (Tr.

114:3-11); A440-A441 (Tr. 119:23-120:14); A455-A456 (Tr. 131:13-132:14))

With regard to the Act's legislative intent, the district court, like Garnishee,

ignored the notable disparity in power that existed between Garnishee and

Campaign. As noted by Garnishee, "[t]he Act was 'designed to assist tenants in

16

vindicating their legal rights and to equalize the disparity in power which exists between landlord and tenant.' 'The act was passed to control practices of landlords who withhold, without justification, their tenant's damage deposits.'" (App. Vol. II at A244)

Unlike Campaign, Garnishee was represented by legal counsel, Mike Lustig, who prepared and drafted the lease on behalf of Garnishee. (App. Vol. II at A405) Unlike Campaign, Garnishee was represented by a real estate agent, Ling Yan Zhang. (App. Vol. II at A405) In contrast, there is no evidence that Campaign was represented by legal counsel or had any other outside assistance related to the negotiation and preparation of the Campaign Lease.

In an acknowledgement of this disparity, counsel for Garnishee included a provision in the Lease that mirrors C.R.S. § 38-12-103(1) (requiring a landlord to either return the security deposit within one month of the tenant's surrender of the property unless the lease provides for a longer period not to exceed sixty days):

> **12.    Return of Security Deposit:** If Tenant shall perform all of its respective covenants and agreements in the Lease, the Security Deposit, or the portion thereof not previously applied pursuant to the provisions of the Lease, ***together with a statement***, shall be returned to Tenant without interest, no later than sixty (60) days after the expiration of the Term, or any renewal or extension thereof (or such earlier time if required by ***applicable law***), provided Tenant has vacated the Premises and surrenders possession thereof to Landlord. (emphasis added)

17

(App. Vol. I at A154 (¶12))

For the foregoing reasons, the district court made an erroneous legal

conclusion and, thereby, abused its discretion when it concluded that the Security

Deposit Act did not apply to the Lease.

## IV.    The District Court Erred In Deciding That Plaintiff Was Not Entitled To The Security Deposit.

The district court abused its discretion when it made the erroneous legal

conclusion that Garnishee and Campaign could reach an oral agreement that

Garnishee would retain the security deposit as a set off against Campaign's

unpaid rent:  "[P]laintiff has come forward with no evidence that Hartman and

Campaign did not reach an agreement that Campaign would retain the security

deposit as a setoff against Campaign's unpaid rent in exchange for Hartman's

agreement not to pursue a claim against Sewell under his personal guaranty."

(App. Vol. II at A465)

Even if the set off occurred, it did not excuse Garnishee's obligation to

deliver a written statement accounting for the security deposit. The statutory

requirement that Garnishee issue a written statement is mandatory, not

discretionary.  (Addenda 011 (C.R.S. § 38-12-103(1) ("…the landlord ***shall***

provide the tenant with a written statement…") (emphasis added))  The use of the

word "shall" represents "mandatory language…." *AA Wholesale Storage, LLC v.*

*Swinyard*, 488 P.3d 1213, 1219 (Colo. 2021).  Thus, under the Security Deposit

Act, Garnishee had 60 days from the termination of the Lease to deliver a written statement to Campaign.[5]  Garnishee admits that it did not comply with C.R.S. § 38-12-103(1).  (App. Vol. I at A227)  As a result of said failure, in accordance with C.R.S. § 38-12-103(2), Garnishee has forfeited all of its rights to withhold any portion of the security deposit. (Addenda 011)

## V.    The District Court Erred In Deciding That Plaintiff Was Not Entitled To Treble Damages.

The district court abused its discretion when it made the erroneous legal conclusion that Plaintiff was not entitled to treble damages. In reaching this erroneous legal conclusion, the district court found that (1) the Security Deposit Act, which provides for treble damages for the willful withholding of a security deposit, did not apply, (2) even if the Security Deposit Act did apply, it was not violated, (3) Plaintiff did not demonstrate that Garnishee's obligation to pay treble damages to Campaign was ripe, (4) the Campaign's right to treble damages was not a chose in action that could be garnished, and (5) Plaintiff had standing to garnish it. (App. Vol II at A467)

### A.    Plaintiff Has Shown That the Security Deposit Act Applies And That Garnishee Violated The Act.

As set forth in Sections II, III and IV above, Plaintiff has established that the

_____

[5] The Lease also required Garnishee to deliver a similar written statement to Campaign.  (App. Vol. I at A154 (¶12))

Lease was a residential lease, that as a residential lease the Security Deposit Act

applied, and that Garnishee violated the Act.

### B. Garnishee's Obligation To Pay Treble Damages To Campaign Was Ripe.

With regard to ripeness, the district court's conclusion ignores Colorado

Rule of Civil Procedure 103.  "This rule sets forth the exclusive process for

garnishment."  (Addenda 019)  Rule 103, Section 4 applies to a Writ of

Garnishment—Judgment Debtor Other than Natural Person.  Section 4(a) defines a

"Writ of garnishment—judgment debtor other than natural person" as:

> The exclusive procedure through which personal
> property of any kind of a judgment debtor other than a
> natural person in the possession or control of the
> garnishee including the credits, debts, choses in action, or
> money owed to the judgment debtor, ***whether they are***
> ***due at the time of the service of the writ or are to***
> ***become due thereafter*** is required to be held by a
> garnishee for payment of a judgment debt. (emphasis
> added)

(Addenda 024)

Section 4(a) makes clear that "credits, debts, choses in action, or money

owed to the judgment debtor" that ***become due after the writ of garnishment is***

***served*** must be held by the garnishee.  (Addenda 024) Based on the plain,

unambiguous language of Rule 103, § 4(a), Campaign's claim for treble damages

was ripe.

The district court's conclusion also ignores C.R.S. § 38-12-103(3).

20

(Addenda 011-012) This section provides that "[u]pon forfeiture of the landlord's rights to withhold any portion of the security deposit, subsection 3(a) authorizes a tenant to seek treble damages against a landlord after serving a seven-day demand notice:

> (3)(a) The willful retention of a security deposit in violation of this section shall render a landlord liable for treble the amount of that portion of the security deposit wrongfully withheld from the tenant, together with reasonable attorneys' fees and court costs; except that the tenant has the obligation to give notice to the landlord of his intention to file legal proceedings a minimum of seven days prior to filing said action.

*Mishkin v. Young*, 107 P.2d at 397 (citing to C.R.S. § 38-12-103(3)(a)).

Pursuant to C.R.S. § 38-12-103(3)(a), Plaintiff gave notice to Garnishee of its intent to commence a legal proceeding to recover the full amount of the security deposit, treble damages, plus its reasonable attorney's fees and court costs.  (App. Vol. I at A230 ) Garnishee did not return the security deposit within the seven-day period.  Having given the required seven-day notice required by C.R.S. § 38-12-103(3)(a), Plaintiff's right to treble damages was ripe.

## C.    Campaign's Right To Treble Damages Is A Chose In Action.

The district court failed to cite to any legal authority in support of its conclusion that Campaign's claim for treble damages is not a chose in action.  To support its conclusion that a claim for treble damages is not a chose in action, Garnishee cited to the Colorado Supreme Court's decision in *Carlson v. McCoy*,

566 P.2d 1073, 1075 (Colo. 1977), which stated that Colorado's "security deposit law is both penal and remedial in nature." (App. Vol. II at A248)  In reliance on this statement, Garnishee argued that treble damages available pursuant to C.R.S. § 38-12-103(3)(a) is penal in nature and, therefore, is not a chose in action as it is not dependent on a contract.  (App. Vol. II at A248)

However, *Carlson* is distinguishable. First, it's holding is limited to cases involving the classification of actions for purposes of statutes of limitation and, for that reason, is not applicable in this case.  Indeed, the Court in *Carlson* made clear that it's holding was limited to determining the classification of actions for purposes of statutes of limitations: "We have held that statutes which impose penalties in excess of actual damage are penal for purposes of the statute of limitations." *Id.*  Further, the decision in Carlson, which is nearly fifty years old, has recently been called into question by the Colorado Supreme Court in *Rooftop Restoration, Inc. v. American Family Mutual Insurance Co.*, 418 P.3d 1173, 1175-76 (Colo. 2018), for failure to "consider the intent of the legislature as evidenced by the statutory text and the broader statutory scheme in violation of a core tenant of statutory interpretation."

There appear to be no reported decisions in Colorado that prohibit or preclude a judgment creditor's efforts to collect treble damages based on a garnishee's willful violation of C.R.S. § 38-12-103(3)(a).  The most analogous

22

case law dealing with the assignment of remedial versus penal actions is the Colorado Supreme Court's decision in *Kruse v. McKenna*, 178 P.3d 1198, 1200 (Colo. 2008), which held that a remedial action could be assigned, while a penal action could not. "To determine whether a claim is assignable under Colorado law, we look to whether it survives the death of the person originally entitled to assert the claim." *Id.* at 1200. *Kruse* held that a penal action, such as an action seeking treble or punitive damages, was not assignable since it would not survive the death of the person originally entitled to assert the claim. *Id.* at 1202.

However, the holding in *Kruse* was later overruled by the Colorado Supreme Court's decision in *Guarantee Trust Life Ins. Co. v. The Estate of Casper*, 418 P.3d 1163, 1169 (Colo. 2018). Now, the survival statute's limitation against the award of penalties and punitive damages applies only if the party against whom such penalties or damages are claimed has died. *Id.* at 1169. In overruling its decision in *Kruse*, the Colorado Supreme Court in *Casper* looked both to the plain meaning of the statute and practical sense:

> Our reading of the survival statute announced today not only more properly complies with the text of the survival statute, but also makes practical sense. If a hypothetical cause of action is punitive in nature, and the defendant who was due to face some punishment (presumably to encourage a change in future behavior) dies, the social utility of the punishment is eliminated. However, if the plaintiff is the deceased party, the social utility of punishing the defendant remains.

*Id*. at 1169.

Analogous to the survival statute at issue in *Casper*, which considered the social utility of punishing the defendant in order to change future behavior, the Security Deposit Act, which is to be liberally construed in favor of tenants, has a similar social utility: To change the future behavior of landlords who willfully withhold a security deposit from the tenant.  As explained in *Mishkin v. Young*, 198 P.3d 1269, 1273 (Colo. App. 2008):

> The Act provides that "willful retention of a security deposit in violation of this section shall render a landlord liable for treble the amount of that portion of the security deposit wrongfully withheld from the tenant, *together with reasonable attorney's fees and court costs*…. § 38-12-103(3)(a).  The General Assembly has directed that the Act "be liberally construed" to achieve its purposes. § 38-12-101, C.R.S. 2008.  The supreme court has relied on this legislative declaration in construing the Act liberally in favor of tenants.  *See Anderson v. Rosebrook*, 737 P.2d 417, 421 (Colo. 1987) (construing Act to require that "an exception be made to the common law doctrine of accord and satisfaction). (emphasis in original)

*Id.* at 1273.

Given that the Colorado General Assembly has directed that the Security Deposit Act be liberally construed in favor of tenants to achieve its purpose and that one of those purposes is to punish landlords who willfully withhold a security deposit, the legislative intent would be defeated if Garnishee's position were adopted.

**D.  Plaintiff Has Standing To Garnish Campaign's Right To Treble Damages.**

The district court failed to cite to any legal authority in support of its conclusion that Plaintiff lacked standing to garnish Campaign's right to treble damages.  Under Colo. R. Civ. P. 103 § 4(a), as against a garnishee a judgment creditor can garnish "choses in action" belonging to the judgment debtor. (Addenda 024) "A chose in action is a 'right to receive or recover a debt, or money, or damages for breach of contract, or for a tort connected with contract, but which cannot be enforced without action.'" *AA Wholesale Storage, LLC v. Swinyard*, 488 P.3d 1213, 1216 (Colo. 2021) (quoting *Ford v. Summertree Lane Ltd. Liab. Co.*, 56 P.3d 1206, 1209 (Colo. App. 2002) (quoting *City & Cnty. of Denver v. Jones*, 85 Colo. 212, 214, 274 P. 924, 924 (1929)).

In *AAA Wholesale*, the judgment creditor tried, without success, to collect on its judgment.  During its post-judgment collection efforts, judgment creditor learned that the judgment debtor was in the early stages of litigation against third parties and, pursuant to Colo. R. Civ. P. 69(g), moved for the turnover of the judgment debtor's choses in action against the third-party defendants with the hope of applying the proceeds of that litigation to its judgment.  The trial court denied the motion on the basis that the choses in action, in this case foreclosure of a mechanic's lien, would require the participation of the judgment debtor since it involved "quality and nature and extent of the work performed and it's clearly

25

dependent upon [judgment debtor's] testimony…." *Id*. at 1216. Judgment creditor appealed.

The Colorado Court of Appeals affirmed. In affirming the order of the trial court, the Court of Appeals started with the interpretation of Colo. R. Civ. P. 69(g). "We interpret the rules by applying settled principles of statutory construction. This means that we interpret the rules' words according to their commonly understood and accepted meanings and give consistent, harmonious, and sensible effects to all parts of the rules. The rules shall be liberally construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action. C.R.C.P. 1(a)." *Id*. at 1218 (internal citations and quotations omitted).

The Court of Appeals confirmed the trial court's denial of the motion for two reasons. First, Colo. R. Civ. P. 69(g) uses the word "may order," which according to the Court of Appeals, "'is generally indicative of a grant of discretion or choice among alternatives.'" *Id*. at 1219 (citing *A.S. v. People of the State of Colorado*, 312 P.3d 168, 174-75 (Colo. 2013)). In contrast, "[i]f the supreme court, in its rulemaking authority, intended to require trial courts to automatically grant C.R.C.P. 69(g) motions, or to always grant them in certain defined situations, it would have used mandatory language to accomplish that goal" such as by using "mandatory language directed at the court, such as 'must,' 'shall,' or 'is required

to.'" *Id*. (citing *Sidman v. Sidman*, 411 P.3d 167, 171-72 (Colo. 2016)).

Second, the Court of Appeals acknowledged that, based on the facts of the case, "that transferring [the judgment debtor's] choses in action to [judgment creditor] would likely not to lead to a just, speedy, or inexpensive result" as contemplated by Colo. R. Civ. P. 1(a).  *Id*. at 1219.  Specifically, a just, speedy, and inexpensive resolution was not likely since the judgment creditor would have to "prove up the value of services rendered, which would require [judgment debtor's] participation in the case," and that the judgment debtor would not be motivated to pursue the case since any recovery would not inure to him.  *Id*. at 1220.

In contrast, this case is distinguishable from *AA Wholesale*.  First, the applicable Colorado Rule of Civil Procedure uses mandatory, not discretionary, language: "If the courts finds the garnishee liable to the judgment debtor…, [t]he court *shall* enter judgment in favor of the judgment debtor…against the garnishee for the use and benefit of the judgment creditor."   (Addenda 031 (Colo. R. Civ. P. 103 § 8(b)(3)(A) (emphasis added))

Second, unlike *AA Wholesale*, Plaintiff can obtain a just, speedy and inexpensive resolution without the participation of judgment debtor Campaign.  In order to recover treble damages pursuant to C.R.S. § 38-12-103(3)(a), Plaintiff need only establish that Garnishee's retention of the Security Deposit was

"willful."  (Addenda 011 (C.R.S. § 38-12-103(3)(a))  The mere withholding of the security deposit beyond the seven-day period provided for in § 38-12-103(1) establishes willfulness.  *Mishkin v. Young*, 107 P.2d at 397 (landlord's retention of security deposit "was willful because the landlord failure to return the entire security deposit within the seven-day period.").

Based thereon, Plaintiff has standing to standing to garnish Campaign's right to treble damages.

## CONCLUSION

The district court's Order denying Plaintiff's Traverse should be reversed. This Court should find that (i) the Lease is a residential lease, (ii) the Security Deposit Act applies to the Lease, (iii) Garnishee violated C.R.S. § 38-12-103(1) by failing to deliver a written statement accounting for the security deposit, (iv) Campaign's right to treble damages for Garnishee's willful retention of the security deposit is a chose in action, and (v) Plaintiff has standing to garnish Campaign's right to treble damages.

Dated: July 12, 2023                    **ITO LAW GROUP, P.C.**


By:  /s/ Peter W. Ito
    Peter W. Ito
    1550 Larimer Street, Suite 667
    Denver, CO 80202
    Telephone: (720) 281-5294
    Email: peter@itolawgroup.com

**Attorneys for Five Points Management
Group, Inc.**

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is not requested.

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

1.    This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) this document contains 6,649 words.

2.    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Time New Roman font.

Dated: July 12, 2023                    **ITO LAW GROUP, P.C.**


By:   /s/ Peter W. Ito
    Peter W. Ito
    1550 Larimer Street, Suite 667
    Denver, CO 80202
    Telephone: (720) 281-5294
    Email: peter@itolawgroup.com

**Attorneys for Five Points Management Group, Inc.**

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the following:

    (1)     all required privacy redactions have been made per 10th Cir. R. 25.5;

    (2)     if required to file additional hard copies, that the ECF submission is an exact copy of those documents;

    (3)     the digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program and are free of viruses.

Dated: July 12, 2023            **ITO LAW GROUP, P.C.**


                         By:  /s/ Peter W. Ito
                             Peter W. Ito
                             1550 Larimer Street, Suite 667
                             Denver, CO 80202
                             Telephone: (720) 281-5294
                             Email: peter@itolawgroup.com

                         **Attorneys for Five Points Management Group, Inc.**

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 12th day of July 2023, I electronically filed the foregoing using the court's CM/ECF system which will send notification of such filing to the following:

Brad W. Schacht
Otten Johnson Robinson Neff & Ragoinetti, P.C.
950 17th Street, Suite 1600
Denver, CO 80202
Email: bschacht@ottenjohnson.com

***Attorneys for Hartman Art Studios LLC***

I declare under penalty of perjury under the laws of the United States of America and the State of Colorado that the above and foregoing is true and correct.

Dated: July 12, 2023                    **ITO LAW GROUP, P.C.**


By:   /s/ Peter W. Ito
        Peter W. Ito
        1550 Larimer Street, Suite 667
            Denver, CO 80202
        Telephone: (720) 281-5294
        Email: peter@itolawgroup.com

**Attorneys for Five Points Management Group, Inc.**

# ADDENDA

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 1:20-cv-02599-RBJ

FIVE POINTS MANAGEMENT GROUP, INC.,

  Plaintiff,

v.

CAMPAIGN, INC., a Delaware corporation and
BRADLEY SEWELL, an individual,

  Defendants.

---

## ORDER REGARDING TRAVERSE

---

**Background**.

On August 20, 2021, the Court entered an Amended Final Judgment in favor of the

plaintiff against both defendants in the amount of $2,219,276.52 plus post-judgment interest.

The judgment was entered pursuant to the terms of a Lease Termination Agreement and

incorporated documents between plaintiff and defendant Campaign Inc. ("Campaign"), the

performance of which had been guaranteed by defendant Bradley A. Sewell.

In an effort to collect its judgment, plaintiff served a writ of garnishment on Hartman Art

Studios LLC ("Hartman").  ECF No. 62.  In its answer to the writ of garnishment, filed on May

18, 2022, Hartman indicated that Campaign had made a security deposit of $27,000 to secure a

lease of Hartman's property, but that Hartman was claiming a right of setoff against the deposit.

*See* ECF No. 64.

**Traverse**.

Plaintiff then filed a traverse of Hartman's answer, essentially challenging Hartman's right to retain Campaign's security deposit.  ECF No. 65.[1]  Plaintiff informs the Court that Campaign had entered into a lease with Hartman on May 1, 2020.  *Id.* at 5.  This was a five-year lease of property in Denver, Colorado.  *See* ECF No. 65-3.  The lease required Campaign to provide a $27,000 security deposit to secure the performance of Campaign's obligations under the lease, including unpaid rent.  *Id.* at 4, ¶¶10-11. The security deposit or any portion not applied pursuant to the provisions of the lease must be returned within 60 days after the expiration of the lease.  *Id.* at ¶12.

The lease was terminated after Campaign was dissolved on December 18, 2020.  At that time Campaign had made three monthly lease payments totaling $40,500.  It had failed to pay for five additional months and was delinquent in the amount of $67,500 for those months.  ECF No. 71-1 at 2, ¶¶9-13 (Affidavit of Carl Hartman, the owner of Hartman).  Hartman retained Campaign's security deposit.  *Id.* ¶17.  Effective August 1, 2021 Hartman re-rented the space to Texture Supply Inc., another company operated by Mr. Sewell.  Texture Supply was required to post a $27,500 security deposit but has not yet done so.  *Id.*¶¶ 18-22.

I note that none of the foregoing facts is disputed.  However, in a deposition taken on April 26, 2022, Mr. Hartman testified that he did not know where the security deposit was or whether it had been returned to Campaign.  *Id.* at 7.  Mr. Sewell testified in a deposition taken

---

[1] The traverse is excessively long and not in compliance with the Court's practice standards concerning motions.  However, the Court has considered it.

the next day that the security deposit had not been returned; and he assumed that it had been applied to unpaid rent. *Id.*

Immediately after Hartman filed its answer to the writ of garnishment, plaintiff requested that Hartman provide the date the setoff occurred and a copy of the written statement accounting for any portion of the security deposit that was not returned, citing Colo. Rev. Stat. § 38-12-103(1). Hartman responded, through counsel, that it did not know the date of the setoff, and that there was no formal notice or accounting because the parties to the lease agreed that the security deposit could be retained. *Id.* at 8-9 and ECF No. 65-8.

Plaintiff was not satisfied. It claims that the garnishee's answer to the writ of garnishment was "false and erroneous" for multiple reasons based on the following "undisputed facts:" (1) Campaign posted the security deposit; (2) the lease between Campaign and Hartman Art Studios terminated at the latest on August 1, 2021; (3) as of April 26, 2022 the garnishee did not know what happened to the security deposit; (4) as of April 27, 2022 Mr. Sewell acknowledged that the garnishee had not returned the security deposit; (5) the current lessee, Texture Supply, had not posted a security deposit; (6) there was no agreement between Campaign and Hartman regarding disposition of the security deposit; and (7) the garnishee did not provide written notice accounting for the disposition of the security deposit. ECF No. 65 at 9. I agree that these facts are undisputed with the exception of number 6 which is sharply disputed.

According to plaintiff, the only conclusions that can be drawn are that (1) Mr. Sewell lied under oath in his deposition; or (2) the setoff occurred between April 28 and May 18, 2022 ("the

gap period"); or (3) there was no setoff.  ECF No. 65 at 10.  He submits that only the third possibility is plausible because there is no evidence that Mr. Sewell lied, and it makes no sense that a setoff occurred during the gap period.  The latter supposition is based on the facts that the garnishee could not identify when a setoff occurred when asked just 27 days later, the security deposit was not identified in Mr. Sewell's bankruptcy filing six months earlier; and the garnishee did not deliver a written statement accounting for the security deposit as purportedly required by Colo. Rev. Stat. § 38-12-103(1).  *Id.* at 10-12.

Plaintiff goes two steps further.  First, it argues that Campaign is entitled to seek treble damages against Hartman plus attorney's fees because Hartman's retention of Campaign's security deposit was not only wrongful but willfully wrongful.  *Id.* at 14-15.  Second, Hartman's purported obligation to Campaign for treble damages and attorney's fees is a "chose in action" subject to garnishment.  *Id.* at 15-18.  Accordingly, plaintiff contends that its writ of garnishment reaches and attaches not only Hartman's debt to Campaign for the security deposit but also Hartman's alleged debt to Campaign for treble damages and attorney's fees.  *Id.* at 18.  Plaintiff thus asks the Court to enter judgment on its traverse and award plaintiff $108,000 plus attorney's fees against Hartman.  *Id.* at 19-20.

**<u>Response</u>**.

Hartman provides affidavits from Mr. Hartman and Mr. Sewell.  According to Mr. Hartman's affidavit, Hartman was entitled under the lease to apply Campaign's $27,000 security deposit toward its outstanding rent obligation; and Mr. Sewell agreed.  ECF No. 71-1 at ¶¶14, 15. Hartman agreed that it would not attempt to enforce or pursue Mr. Sewell's personal guarantee

4

of the lease. *Id.* at ¶16. Therefore, Hartman saw no reason for an accounting of the security deposit. *Id.* ¶17. When Hartman re-leased the property, Texture Supply was required to tender a $27,000 security deposit. It has not done so. However, Hartman has not credited Campaign's security deposit toward Texture Supply's obligation. *Id.* ¶21-23.

According to the affidavit of Mr. Sewell, ECF No. 71-2, Campaign defaulted on its lease with Hartman after Campaign dissolved, the result of the loss of a supply contract. *Id.* ¶¶10-14. The lease provided that Hartman could apply Campaign's $27,000 security deposit towards the outstanding lease obligation. *Id.* ¶15. He agreed that Hartman would keep the security deposit as a setoff, and that Hartman in turn would not pursue Mr. Sewell's personal guarantee. *Id.* ¶¶16, 17. Because of the agreement, he did not expect to receive any written accounting from Hartman concerning the security deposit. *Id.* ¶18.

Regarding plaintiff's argument that Hartman violated Colo. Rev. Stat. § 38-12-103(1), Hartman responds that the statute has no application to the commercial lease agreement in this case. The statute was "designed to assist tenants in vindicating their legal rights and to equalize the disparity in power which exists between landlord and tenant." *Mishkin v. Young,* 107 P.3d 393, 399 (Colo. 2005). ECF No. 71 at 6-9. Even if the statute did apply, a garnishee may set off against the garnished property any claim it has against the debtor per Colo. R. Civ. P. 103 § 10. ECF No. 71 at 9-10. Moreover, Hartman entered into an arms-length agreement that Hartman would retain the $27,000 security deposit as a setoff against more than $67,500 in past due rent, as confirmed by the principals of both entities. Therefore, were Campaign to demand the $27,500 from Hartman, its claim would fail as a result of waiver. *Id.* at 10-11. Finally, while

5

plaintiff characterizes Hartman's purported debt to Campaign as a garnishable "chose in action," the claim for treble damages is a statutory penalty, not a chose in action. A chose in action must be a contractual liability. *Id.* at 11-13.

Hartman asks the Court to award attorney's fees to it and against plaintiff pursuant to Colo. R. Civ. P. 103(8)(b)(5).

**Reply**

Plaintiff has filed a 30-page reply. That is so far in excess of the Court's practice standard page limit that I have disregarded everything beyond the first five pages. Plaintiff challenges the credibility of Mr. Sewell's affidavit and implies that Mr. Hartman's affidavit is also suspect due to his personal and business relationship with Mr. Sewell. ECF No. 72 at 2-4. In any event, Hartman has cited no case law supporting its position that Colo. Rev. Stat. § 38-12-103(1) does not apply to a lease between two business entities. The "clear and unambiguous language" of the definitions in the statute shows that it does apply to the lease between Campaign and Hartman. *Id.* at 1-2, 4-5.

**Conclusions**

First, plaintiff has come forward with no evidence that Hartman and Campaign did not reach an agreement that Campaign would retain the security deposit as a setoff against Campaign's unpaid rent in exchange for Hartman's agreement not to pursue a claim against Mr. Sewell under his personal guaranty. Indeed, Hartford had the right to apply the security deposit to the unpaid rent under the unambiguous terms of the lease agreement between Campaign and

Addenda 007

Hartman. Plaintiff's assertion that Mr. Hartman and Mr. Sewell are misrepresenting that fact has no basis in any fact brought to the Court's attention.

Second, the Court agrees with Hartman that the Security Deposits Act, Colo. Rev. Stat. § 38-12-101 *et seq.,* and, in particular, its requirement that a landlord provide a tenant with a written accounting for any portion of the tenant's security deposit that the landlord retains, does not apply here. The statute requires that a "landlord" return the full "security deposit" to the "tenant" within one month after the termination of the lease unless the lease agreement specifies a longer period. "If actual cause exists for retaining any portion of the security deposit, the landlord shall provide the tenant with a written statement listing the exact reasons for the retention of any portion of the security deposit." The willful retention of a security deposit in violation of this section shall render a landlord liable for treble the amount of that portion of the security deposit wrongfully withheld from the tenant, together with reasonable attorney's fees and court costs." § 38-12-103(3)(a).

However, the term "security deposit" means "any advance or deposit of money, regardless of its denomination, the primary function of which is to secure the performance of a rental agreement for a residential premises or any part of a residential premises." Colo. Rev. Stat. § 38-12-102(6). "Residential premises" means " a dwelling unit, the structure of which the unit is a part, and the common areas." *Id.* § 38-12-502(8). "Dwelling unit" is "a structure or the part of a structure that is used as a home, residence, or sleeping unit by a tenant." *Id.* § 38-12-502(3). The term "tenant" is defined as "a person entitled under a rental agreement to occupy a dwelling unit to the exclusion of others." Colo. Rev. Stat. § 38-12-502(9).

Thus, the statute applies, by the plain meaning of its terms, to residential leases between a landlord and an individual tenant or tenants.  It does apply to a commercial lease between businesses.  Moreover, by the statute's own terms, "[n]othing in this section shall preclude the landlord from retaining the security deposit for nonpayment of rent . . . ."  Colo. Rev. Stat. § 38-12-103(1).

The Court finds that there are no genuine disputes of material fact that preclude a decision on the traverse without a trial.  It concludes that plaintiff's effort to garnish Hartman's purported debt to Campaign fails.  There was no debt because the security deposit was properly set off against Campaign's debt to Hartman for nonpayment of rent.  The Court finds that plaintiff's effort to garnish Hartman's purported obligation to pay treble damages to Campaign because of Hartman's willful retention of Campaign's security deposit in violation the Security Deposits Act fails on multiple grounds including that the statute does not apply; that even if it did apply, it was not violated; and that, in any event, plaintiff did not demonstrate that Hartman's purported obligation to pay treble damages to Campaign was ripe; or that it was a chose in action that could be garnished; or that plaintiff had standing to garnish it.

**<u>Order</u>**

Plaintiff's traverse, ECF No. 65, is DENIED.  If Hartman wishes to pursue its claim for attorney's fees against plaintiff, it may file an appropriate motion within 30 days but only after the parties confer in good faith and attempt to resolve the issue.  Any motion must address, among other things, whether Colo. R. Civ. P. 103(8)(b)(5) is procedural or substantive for *Erie* purposes; what standard, if any, has been recognized by Colorado state or federal courts for

Addenda 009

awarding attorney's fees under that rule; whether the standard has been met here; and if Hartman

is entitled to any fee award, what the reasonable amount is.  If a motion is filed and is fully

briefed, the Court would hold a hearing on entitlement to, and the reasonable amount of, any

attorney's fees.

DATED this 16th day of February, 2023.

BY THE COURT:

_____

R. Brooke Jackson
Senior United States District Judge

Addenda 010

West's Colorado Revised Statutes Annotated
    Title 38. Property--Real and Personal (Refs & Annos)
        Tenants and Landlords
            Article 12. Tenants and Landlords
                Part 1. Security Deposits--Wrongful Withholding (Refs & Annos)

C.R.S.A. § 38-12-103

## § 38-12-103. Return of security deposit

Currentness

(1) A landlord shall, within one month after the termination of a lease or surrender and acceptance of the premises, whichever occurs last, return to the tenant the full security deposit deposited with the landlord by the tenant, unless the lease agreement specifies a longer period of time, but not to exceed sixty days. No security deposit shall be retained to cover normal wear and tear. In the event that actual cause exists for retaining any portion of the security deposit, the landlord shall provide the tenant with a written statement listing the exact reasons for the retention of any portion of the security deposit. When the statement is delivered, it shall be accompanied by payment of the difference between any sum deposited and the amount retained. The landlord is deemed to have complied with this section by mailing said statement and any payment required to the last known address of the tenant. Nothing in this section shall preclude the landlord from retaining the security deposit for nonpayment of rent, abandonment of the premises, or nonpayment of utility charges, repair work, or cleaning contracted for by the tenant.

(2) The failure of a landlord to provide a written statement within the required time specified in subsection (1) of this section shall work a forfeiture of all his rights to withhold any portion of the security deposit under this section.

(3)(a) The willful retention of a security deposit in violation of this section shall render a landlord liable for treble the amount of that portion of the security deposit wrongfully withheld from the tenant, together with reasonable attorney fees and court costs; except that the tenant has the obligation to give notice to the landlord of his intention to file legal proceedings a minimum of seven days prior to filing said action.

(b) In any court action brought by a tenant under this section, the landlord shall bear the burden of proving that his withholding of the security deposit or any portion of it was not wrongful.

(4) Upon cessation of his interest in the dwelling unit, whether by sale, assignment, death, appointment of a receiver, or otherwise, the person in possession of the security deposit, including but not limited to the landlord, his agent, or his executor, shall, within a reasonable time:

(a) Transfer the funds, or any remainder after lawful deductions under subsection (1) of this section, to the landlord's successor in interest and notify the tenant by mail of such transfer and of the transferee's name and address; or

(b) Return the funds, or any remainder after lawful deductions under subsection (1) of this section, to the tenant.

Addenda 011

Appellate Case: 23-1125    Document: 010110886503    Date Filed: 07/12/2023    Page: 51

(5) Upon compliance with subsection (4) of this section, the person in possession of the security deposit shall be relieved of further liability.

(6) Upon receipt of transferred funds under subsection (4)(a) of this section, the transferee, in relation to such funds, shall be deemed to have all of the rights and obligations of a landlord holding the funds as a security deposit.

(7) Any provision, whether oral or written, in or pertaining to a rental agreement whereby any provision of this section for the benefit of a tenant or members of his household is waived shall be deemed to be against public policy and shall be void.

**Credits**
Amended by Laws 1976, H.B.1137, § 67.

Notes of Decisions (60)

C. R. S. A. § 38-12-103, CO ST § 38-12-103
Current through legislation effective July 1, 2023 of the First Regular Session, 74th General Assembly (2023). Some statute sections may be more current. See credits for details.

**End of Document**                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Addenda 012

Appellate Case: 23-1125     Document: 010110886503     Date Filed: 07/12/2023     Page: 52

West's Colorado Revised Statutes Annotated
Title 38. Property--Real and Personal (Refs & Annos)
Tenants and Landlords
Article 12. Tenants and Landlords
Part 5. Obligation to Maintain Residential Premises--Unlawful Removal (Refs & Annos)

C.R.S.A. § 38-12-502

§ 38-12-502. Definitions

Effective: May 12, 2023

Currentness

As used in this part 5 and part 8 of this article 12, unless the context otherwise requires:

(1) "Appliance" means a refrigerator, range stove, or oven that is included within a residential premises by a landlord for the use of the tenant pursuant to the rental agreement or any other agreement between the landlord and the tenant. Nothing in this section requires a landlord to provide any appliance, and section 38-12-505 applies to appliances solely to the extent that appliances are part of a written agreement between the landlord and the tenant or are otherwise actually provided to a tenant by the landlord at the inception of the tenant's occupancy of the residential premises.

(2) "Common areas" means the facilities and appurtenances to a residential premises, including the grounds, areas, and facilities held out for the use of tenants generally or whose use is promised to a tenant.

(3) "Dwelling unit" means a structure or the part of a structure that is used as a home, residence, or sleeping place by a tenant.

(4) "Electronic notice" means notice by electronic mail or an electronic portal or management communications system that is available to both a landlord and a tenant.

(4.5) "Environmental public health event" means a natural disaster or an environmental event, such as a wildfire, a flood, or a release of toxic contaminants, that could create negative health and safety impacts for tenants that live in nearby residential premises.

(5) "Landlord" means the owner, manager, lessor, or sublessor of a residential premises.

(6) "Mold" means microscopic organisms or fungi that can grow in damp conditions in the interior of a building.

(7) "Rental agreement" means the agreement, written or oral, embodying the terms and conditions concerning the use and occupancy of a residential premises.

Addenda 013

Appellate Case: 23-1125     Document: 010110886503     Date Filed: 07/12/2023     Page: 53

(8) "Residential premises" means a dwelling unit, the structure of which the unit is a part, and the common areas.

(9) "Tenant" means a person entitled under a rental agreement to occupy a dwelling unit to the exclusion of others.

(10) "Vulnerable population" means children, individuals with asthma, individuals with disabilities, individuals who are pregnant, or any other group of individuals that has health conditions that could make the individuals more susceptible to environmental contaminants.

**Credits**

Added by Laws 2008, Ch. 387, § 3, eff. Sept. 1, 2008. Amended by Laws 2018, Ch. 61, § 1, eff. Aug. 8, 2018; Laws 2019, Ch. 229 (H.B. 19-1170), § 2, eff. Aug. 2, 2019; Laws 2023, (H.B. 23-1254), § 2, eff. May 12, 2023.

Notes of Decisions (1)

C. R. S. A. § 38-12-502, CO ST § 38-12-502
Current through legislation effective July 1, 2023 of the First Regular Session, 74th General Assembly (2023). Some statute sections may be more current. See credits for details.

**End of Document**                                             © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Addenda 014

Appellate Case: 23-1123    Document: 010110886503    Date Filed: 07/12/2023    Page: 54

West's Colorado Revised Statutes Annotated
 Title 2. Legislative
  Statutes--Construction and Revision
   Article 4. Construction of Statutes (Refs & Annos)
    Part 4. Definitions

C.R.S.A. § 2-4-401

§ 2-4-401. Definitions

Effective: September 7, 2021
Currentness

The following definitions apply to every statute, unless the context otherwise requires:

(1) "Behavioral health" refers to an individual's mental and emotional well-being and actions that affect an individual's overall wellness. Behavioral health problems and disorders include substance use disorders, serious psychological distress, suicide, and other mental health disorders. Problems ranging from unhealthy stress or subclinical conditions to diagnosable and treatable diseases are included in the term "behavioral health". The term "behavioral health" is also used to describe service systems that encompass prevention and promotion of emotional health, prevention and treatment services for mental health and substance use disorders, and recovery support.

(1.1) "Child" includes child by adoption.

(1.3) "Civil union" means a relationship established by two eligible persons pursuant to the requirements of article 15 of title 14, C.R.S., that entitles them to receive the benefits and protections and be subject to the responsibilities of spouses.

(1.4) "Civil union certificate" means a document that certifies that the persons named in the certificate have established a civil union in this state in compliance with the provisions of article 15 of title 14, C.R.S.

(1.5) "Contraceptive" or "contraception" means a medically acceptable drug, device, or procedure used to prevent pregnancy.

(2) "Court" means a court of record.

(2.5) Repealed by Laws 1980, S.B.114, § 1.

(3) "Executor" includes administrator and "administrator" includes executor.

(3.2) "Felony" includes a drug felony described in article 18 of title 18.

Addenda 015

(3.4) "Gender expression" means an individual's way of reflecting and expressing the individual's gender to the outside world, typically demonstrated through appearance, dress, and behavior.

(3.5) "Gender identity" means an individual's innate sense of the individual's own gender, which may or may not correspond with the individual's sex assigned at birth.

(3.6) "Final disposition" means the disposition of human remains by entombment, burial, cremation, natural reduction, or removal from the state.

(3.7) "Immediate family member" means a person who is related by blood, marriage, civil union, or adoption.

(4) "Issue", as applied to the descent of estate, includes all the lawful, lineal descendants of the ancestor.

(5) "Land", "lands", or "real estate" includes lands, tenements, and hereditaments, and all rights thereto and all interests therein.

(6) "Minor" means any person who has not attained the age of twenty-one years. No construction of this subsection (6) shall supersede the express language of any statute.

(6.3) "Misdemeanor" includes a drug misdemeanor described in article 18 of title 18, C.R.S.

(6.5)(a) "Must" means that a person or thing is required to meet a condition for a consequence to apply. "Must" does not mean that a person has a duty.

(b) This subsection (6.5):

(I) Is not intended to alter the interpretation of a statute enacted before August 7, 2013; and

(II) Applies to statutes enacted on or after August 7, 2013, but only with regard to language that appears in small capital font in the session laws published pursuant to section 24-70-223, C.R.S.

(6.7) "Misdemeanor" includes a drug misdemeanor described in article 18 of title 18, C.R.S.

(6.9) "Natural reduction" or "naturally reduce" means the contained, accelerated conversion of human remains to soil.

(7) "Oath" includes affirmation, and "swear" includes affirm.

(7.5) "Partner in a civil union" or "party to a civil union" means a person who has entered into a civil union in accordance with the requirements of article 15 of title 14, C.R.S.

Addenda 016

(8) "Person" means any individual, corporation, government or governmental subdivision or agency, business trust, estate, trust, limited liability company, partnership, association, or other legal entity.

(8.5) Repealed by Laws 2015, Ch. 259, § 3, eff. Aug. 5, 2015.

(9) "Personal representative" includes executor, administrator, conservator, or guardian.

(9.5) "Petty offense" includes a drug petty offense described in article 18 of title 18, C.R.S.

(10) "Population" means that shown by the most recent regular or special federal census.

(11) "Property" means both real and personal property.

(12) "Registered mail" includes certified mail.

(13) "Rule" includes regulation.

(13.5) "Sexual orientation" means an individual's identity, or another individual's perception thereof, in relation to the gender or genders to which the individual is sexually or emotionally attracted and the behavior or social affiliation that may result from the attraction.

(13.7)(a) "Shall" means that a person has a duty.

(b) This subsection (13.7):

(I) Is not intended to alter the interpretation of a statute enacted before August 7, 2013; and

(II) Applies to statutes enacted on or after August 7, 2013, but only with regard to language that appears in small capital font in the session laws published pursuant to section 24-70-223, C.R.S.

(14) "State", when applied to a part of the United States, includes any state, district, commonwealth, territory, insular possession thereof, and any area subject to the legislative authority of the United States of America.

(15) "United States" includes all states, the District of Columbia, and the territories, commonwealths, and possessions of the United States.

(16) "Will" includes a codicil.

Addenda 017

(17) "Written" or "in writing" includes any representation of words, letters, symbols, or figures; but this provision does not affect any law relating to signatures.

**Credits**

Amended by Laws 1980, S.B.114, § 1; Laws 1990, S.B.90-74, § 2, eff. April 18, 1990; Laws 2008, Ch. 341, § 9, eff. May 29, 2008; Laws 2009, Ch. 126, § 1, eff. Aug. 5, 2009; Laws 2013, Ch. 8, § 2, eff. Aug. 7, 2013; Laws 2013, Ch. 49, § 5, eff. May 1, 2013; Laws 2013, Ch. 333, § 65, eff. Oct. 1, 2013; Laws 2014, Ch. 391, § 1, eff. June 6, 2014; Laws 2015, Ch. 259, § 3, eff. Aug. 5, 2015; Laws 2017, Ch. 263, § 2, eff. May 25, 2017; Laws 2021, Ch. 123 (S.B. 21-006), § 1, eff. Sept. 7, 2021; Laws 2021, Ch. 156 (H.B. 21-1108), § 9, eff. Sept. 7, 2021.

Notes of Decisions (8)

C. R. S. A. § 2-4-401, CO ST § 2-4-401

Current through legislation effective July 1, 2023 of the First Regular Session, 74th General Assembly (2023). Some statute sections may be more current. See credits for details.

*End of Document*                                      © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Appellate Case: 23-1125    Document: 010110886503    Date Filed: 07/12/2023    Page: 58

---

West's Colorado Revised Statutes Annotated
  Colorado Court Rules
    Chapters 1--24. Rules of Civil Procedure
      Chapter 13. Seizure of Person or Property

---

C.R.C.P. Rule 103

## Rule 103. Garnishment

Effective: October 1, 2020
Currentness

This rule sets forth the exclusive process for garnishment. There shall be five (5) types of writs: (1) Writ of Continuing Garnishment, (2) Writ of Garnishment with Notice of Exemption and Pending Levy, (3) Writ of Garnishment for Support, (4) Writ of Garnishment--Judgment Debtor Other Than Natural Person, and (5) Writ of Garnishment in Aid of Writ of Attachment.

**SECTION 1. WRIT OF CONTINUING GARNISHMENT (ON EARNINGS OF A NATURAL PERSON)**

**(a) Definitions.**

(1) "Continuing garnishment" means the exclusive procedure for withholding the earnings of a judgment debtor for successive pay periods for payment of a judgment debt other than a judgment for support as provided in subsection (c) of this rule.

(2) "Earnings" shall be defined in section 13-54.5-101(2), C.R.S., as applicable.

**(b) Form of Writ of Continuing Garnishment and Related Forms.** A writ of continuing garnishment shall be in the form and content of Appendix to Chapters 1 to 17A, Form 26, C.R.C.P. It shall also include at least one (1) "Calculation of Amount of Exempt Earnings" form to be in the form and content of Appendix to Chapters 1 to 17A, Form 27, C.R.C.P. Objection to the calculation of exempt earnings shall be in the form and content of Appendix to Chapters 1 to 17A, Form 28, C.R.C.P.

**(c) When Writ of Continuing Garnishment Issues.** After entry of judgment when a writ of execution can issue, a writ of continuing garnishment against earnings shall be issued by the clerk of the court upon request of the judgment creditor. Under a writ of continuing garnishment, a judgment creditor may garnish earnings except to the extent such earnings are exempt under law. Issuance of a writ of execution shall not be required.

**(d) Service of Writ of Continuing Garnishment.** A judgment creditor shall serve two (2) copies of the writ of continuing garnishment, together with a blank copy of C.R.C.P. Form 28, "Objection to the Calculation of the Amount of Exempt Earnings" (Appendix to Chapters 1 to 17A, Form 28, C.R.C.P.), upon the garnishee, one copy of which the garnishee shall deliver to the judgment debtor as provided in subsection (h)(1) of this rule. Service of the writ shall be in accordance with C.R.C.P. 4, and the person who serves the writ shall note the date and time of such service on the return service. In any civil action, a judgment creditor shall serve no more than one writ of continuing garnishment upon any one garnishee for the same judgment debtor during the Effective Garnishment Period. This restriction shall not preclude the issuance of a subsequent writ within the Effective Garnishment Period.

---

Appellate Case: 23-1125    Document: 010110886503    Date Filed: 07/12/2023    Page: 59

**(e) Jurisdiction.** Service of a writ of continuing garnishment upon the garnishee shall give the court jurisdiction over the garnishee and any earnings of the judgment debtor within the control of the garnishee.

**(f) Effective Garnishment Period.**

(1) A writ of continuing garnishment shall be a lien and continuing levy against the nonexempt earnings of the judgment debtor until such time as earnings are no longer due, the underlying judgment is vacated, modified or satisfied in full, the writ is dismissed, or for 91 days (13 weeks) following service of the writ, if the judgment was entered prior to August 8, 2001, and 182 days (26 weeks) following service of the writ if the judgment was entered on or after August 8, 2001, except when such writ is suspended pursuant to subsection (j) of this rule.

(2) When a writ of continuing garnishment is served upon a garnishee during the Effective Garnishment Period of a prior writ, it shall be effective for the Effective Garnishment Period following the Effective Garnishment Period of any prior writ.

(3) If a writ of garnishment for support pursuant to C.R.S. 14-14-105 is served during the effective period of a writ of continuing garnishment, the Effective Garnishment Period shall be tolled and all priorities preserved until the termination of the writ of garnishment for support.

**(g) Exemptions.** A garnishee shall not be required to deduct, set up or plead any exemption for or on behalf of a judgment debtor excepting as set forth in the Exemption Chart contained in the writ.

**(h) Delivery of Copy to Judgment Debtor.**

(1) The garnishee shall deliver a copy of the writ of continuing garnishment, together with the calculation of the amount of exempt earnings that is based on the judgment debtor's last paycheck prior to delivery of the writ of continuing garnishment to the judgment debtor and the blank copy of C.R.C.P. Form 28, "Objection to the Calculation of the Amount of Exempt Earnings or For Reduction of Withholding Pursuant to Section 13-54-104(2)(a)(I)(D)" (Appendix to Chapters 1 to 17A, Form 28, C.R.C.P.), to the judgment debtor not later than 7 days after the garnishee is served with the writ of continuing garnishment.

(2) For all pay periods affected by the writ, the garnishee shall deliver a copy of the calculation of the amount of exempt earnings and the "Judgment Debtor's Objection to the Calculation of Amount of Exempt Earnings" to the judgment debtor at the time the judgment debtor receives earnings for that pay period.

**(i) Objection to Calculation of Amount of Exempt Earnings.** A judgment debtor may object to the calculation of exempt earnings or object and request an exemption of earnings pursuant to section 13-54-104(2)(a)(I)(D), C.R.S. A judgment debtor's objection to calculation of exempt earnings or objection and request for an exemption of earnings pursuant to section 13-54-104(2)(a)(I)(D), C.R.S., shall be in accordance with Section 6 of this rule.

**(j) Suspension.** A writ of continuing garnishment may be suspended for a specified period of time by the judgment creditor upon agreement with the judgment debtor, which agreement shall be in writing and filed by the judgment creditor with the

Addenda 020

clerk of the court in which judgment was entered and a copy shall be delivered by the judgment creditor to the garnishee. No suspension shall extend the running of the Effective Garnishment Period nor affect priorities.

**(k) Answer and Tender of Payment by Garnishee.**

(1) The garnishee shall file the answer to the writ of garnishment with the clerk of the court and send a copy to the judgment creditor not later than 7 days after the garnishee is served with the writ of continuing garnishment pursuant to section 13-54.5-105(5), C.R.S. However, if the judgment creditor is represented by an attorney, or is a collection agency licensed pursuant to section 5-16-101, et seq., C.R.S., the garnishee shall send such response to the attorney or licensed collection agency.

(2) In the event the answer required by Section 1(k)(1) of this rule is filed and served pursuant to section 13-54.5-105(5)(b), C.R.S., the garnishee shall begin garnishment of the disposable earnings of the judgment debtor on the first payday of the judgment debtor that occurs at least 21 days after the garnishee was served with the writ of continuing garnishment or the first payday after the expiration date of any prior effective writ of continuing garnishment that is at least 21 days after the garnishee was served with the writ of continuing garnishment.

(3) Unless payment is made to an attorney or licensed collection agency as provided in paragraph (k)(1), the garnishee shall pay any nonexempt earnings and deliver a calculation of the amount of exempt earnings to the clerk of the court which issued such writ no less than 7 nor more than 14 days following the time the judgment debtor receives earnings affected by such writ. However, if the answer and subsequent calculations are mailed to an attorney or licensed collection agency under subsection (k)(1), the payment shall accompany the answer.

(4) Any writ of continuing garnishment served upon the garnishee while any previous writ is still in effect shall be answered by the garnishee with a statement that the garnishee has been previously served with one or more writs of continuing garnishment and/or writs of garnishment for support and specify the date on which such previously served writs are expected to terminate.

**(*l*) Disbursement of Garnished Earnings.**

(1) If no objection to the calculation of exempt earnings or objection and request for exemption of earnings pursuant to section 13-54-104(2)(a)(I)(D), C.R.S., is filed by the judgment debtor within 21 days after the garnishee was served with the writ of continuing garnishment, the garnishee shall send the nonexempt earnings to the attorney, collection agency licensed pursuant to section 5-16-101, et seq., C.R.S., or court designated on the writ of continuing garnishment (C.R.C.P. Form 26, page 1, paragraph e). The judgment creditor shall refund to the judgment debtor any disbursement in excess of the amount necessary to satisfy the judgment.

(2) If a written objection to the calculation of exempt earnings is filed with the clerk of the court and a copy is delivered to the garnishee, the garnishee shall send the garnished nonexempt earnings to the clerk of the court. The garnished nonexempt earnings shall be placed in the registry of the court pending further order of the court.

**(m) Request for Accounting of Garnished Funds by Judgment Debtor.** Upon reasonable written request by a judgment debtor, the judgment creditor shall provide an accounting in writing of all funds received to the date of the request, including the balance due at the date of the request.

Addenda 021

**SECTION 2. WRIT OF GARNISHMENT (ON PERSONAL PROPERTY OTHER THAN EARNINGS OF A NATURAL PERSON) WITH NOTICE OF EXEMPTION AND PENDING LEVY**

**(a) Definition.** "Writ of garnishment with notice of exemption and pending levy" means the exclusive procedure through which the personal property of any kind (other than earnings of a natural person) in the possession or control of a garnishee including the credits, debts, choses in action, or money owed to the judgment debtor, whether they are due at the time of the service of the writ or are to become due thereafter, is required to be held for payment of a judgment debt. For the purposes of this rule such writ is designated "writ with notice."

**(b) Form of Writ With Notice and Claim of Exemption.** A writ with notice shall be in the form and content of Appendix to Chapters 1 to 17A, Form 29, C.R.C.P. A judgment debtor's written claim of exemption shall be in the form and content of Appendix to Chapters 1 to 17A, Form 30, C.R.C.P.

**(c) When Writ With Notice Issues.** After entry of a judgment when a writ of execution may issue, a writ with notice shall be issued by the clerk of the court upon request. Under such writ any indebtedness, intangible personal property, or tangible personal property capable of manual delivery, other than earnings of a natural person, owed to, or owned by, the judgment debtor, and in the possession or control of the garnishee at the time of service of such writ upon the garnishee, shall be subject to the process of garnishment. Issuance of a writ of execution shall not be required before the issuance of a writ with notice.

**(d) Service of Writ With Notice.**

(1) Service of a writ with notice shall be made in accordance with C.R.C.P. 4.

(2) Following service of the writ with notice on the garnishee, a copy of the writ with notice, together with a blank copy of C.R.C.P. Form 30 "Claim of Exemption to Writ of Garnishment with Notice" (Appendix to Chapters 1 to 17A, Form 30, C.R.C.P.), shall be served upon each judgment debtor whose property is subject to garnishment by such writ as soon thereafter as practicable. Such service shall be in accordance with C.R.S. 13-54.5-107(2).

**(e) Jurisdiction.** Service of a writ with notice upon the garnishee shall give the court jurisdiction over the garnishee and any personal property of any description, owned by, or owed to the judgment debtor in the possession or control of the garnishee.

**(f) Claim of Exemption.** A judgment debtor's claim of exemption shall be in accordance with Section 6 of this rule.

**(g) Court Order on Garnishment Answer.**

(1) If an answer to a writ with notice shows the garnishee is indebted to the judgment debtor, the clerk shall enter judgment in favor of the judgment debtor and against the garnishee for the use of the judgment creditor in an amount not to exceed the total amount due and owing on the judgment and if the judgment creditor is pro se, request such indebtedness paid into the registry of the court. However, if the judgment creditor is represented by an attorney or is a collection agency licensed pursuant to 5-16-101, et seq., C.R.S., the garnishee shall pay the funds directly to the attorney or licensed collection agency.

(2) No such judgment and request shall enter until the judgment creditor has made a proper showing that: (A) a copy of the writ with notice was properly served upon the judgment debtor, and (B) no written claim of exemption was filed within 14 days after such service or a written claim of exemption was properly filed and the same was disallowed.

(3) If an answer to a writ with notice shows the garnishee to possess or control intangible personal property or personal property capable of manual delivery owned by the judgment debtor, the court shall order the garnishee to deliver such property to the sheriff to be sold as upon execution and the court may enter any order necessary to protect the interests of the parties. Any proceeds received by the sheriff upon such sale shall be paid to the registry of the court to be applied to the judgment debt, but any surplus of property or proceeds shall be delivered to the judgment debtor.

(4) No such order shall enter until the judgment creditor has made a proper showing that: (A) a copy of the writ with notice was properly served upon the judgment debtor, and (B) no written claim of exemption was filed within 14 days after such service or a written claim of exemption was properly filed with the court and the same was disallowed.

**(h) Disbursement by Clerk of Court.** The clerk of the court shall disburse funds to the judgment creditor without further application or order and enter the disbursement in the court records. The judgment creditor shall refund to the clerk of the court any disbursement in excess of the amount necessary to satisfy the judgment.

**(i) Automatic Release of Garnishee.** If a garnishee answers a writ with notice that the garnishee is indebted to the judgment debtor in an amount less than $50.00 and no traverse has been filed, the garnishee shall automatically be released from said writ if the garnishee shall not have been ordered to pay the indebtedness to the clerk of the court within 182 days from the date of service of such writ.

## SECTION 3. WRIT OF GARNISHMENT FOR SUPPORT

**(a) Definitions.**

(1) "Writ of garnishment for support" means the exclusive procedure for withholding the earnings of a judgment debtor for payment of a judgment debt for child support arrearages, maintenance when combined with child support, or child support debts, or maintenance.

(2) "Earnings" shall be as defined in Section 13-54.5-101(2), C.R.S., as applicable.

**(b) Form of Writ of Garnishment for Support.** A writ of garnishment for support shall be in the form and content of Appendix to Chapters 1 to 17A, Form 31, C.R.C.P. and shall include at least four (4) "Calculation of Amount of Exempt Earnings" forms which shall be in the form and content of Appendix to Chapters 1 to 17A, Form 27, C.R.C.P.

**(c) When Writ of Garnishment for Support Issues.** Upon compliance with C.R.S. 14-10-122(1)(c), a writ of garnishment for support shall be issued by the clerk of the court upon request. Under such writ a judgment creditor may garnish earnings except to the extent such are exempt under law. Issuance of a writ of execution shall not be required.

Appellate Case: 23-1125    Document: 010110886503    Date Filed: 07/12/2023    Page: 63

**(d) Service of Writ of Garnishment for Support.** Service of a writ of garnishment for support shall be in accordance with C.R.C.P. 4.

**(e) Jurisdiction.** Service of a writ of garnishment for support upon the garnishee shall give the court jurisdiction over the garnishee and any earnings of the judgment debtor within the control of the garnishee.

**(f) Effective Garnishment Period and Priority.**

(1) A writ of garnishment for support shall be continuing and shall require the garnishee to withhold, pursuant to law, the portion of earnings subject to garnishment at each succeeding earnings disbursement interval until the judgment is satisfied or the garnishment released by the court or released in writing by the judgment creditor.

(2) A writ of garnishment for support shall have priority over any writ of continuing garnishment notwithstanding the fact such other writ may have been served upon the garnishee previously.

**(g) Answer and Tender of Payment by Garnishee.**

(1) The garnishee shall answer the writ of garnishment for support no less than 7 nor more than 14 days following the time the judgment debtor receives earnings for the first pay period affected by such writ. If the judgment debtor is not employed by the garnishee at the time the writ is served, the garnishee shall answer the writ within 14 days from the service thereof.

(2) The garnishee shall pay any nonexempt earnings and deliver a calculation of the amount of exempt earnings, as directed in the writ of garnishment for support, to the family support registry, the clerk of the court which issued such writ, or to the judgment creditor no less than 7 nor more than 14 days following the time the judgment debtor receives earnings during the Effective Garnishment Period of such writ.

**(h) Disbursement of Garnished Earnings.** The family support registry or the clerk of the court shall disburse nonexempt earnings to the judgment creditor without further application or order and enter such disbursement in the court records. The judgment creditor shall refund to the clerk of the court any disbursement in excess of the amount necessary to satisfy the judgment.

## SECTION 4. WRIT OF GARNISHMENT--JUDGMENT DEBTOR OTHER THAN NATURAL PERSON

**(a) Definition.** "Writ of garnishment--judgment debtor other than natural person" means the exclusive procedure through which personal property of any kind of a judgment debtor other than a natural person in the possession or control of the garnishee including the credits, debts, choses in action, or money owed to the judgment debtor, whether they are due at the time of the service of the writ or are to become due thereafter is required to be held by a garnishee for payment of a judgment debt. For purposes of this rule, such writ is designated "writ of garnishment--other than natural person."

**(b) Form of Writ of Garnishment--Other Than Natural Person.** A writ of garnishment under this Section shall be in the form and content of Appendix to Chapters 1 to 17A, Form 32, C.R.C.P.

---

**(c) When Writ of Garnishment--Other Than Natural Person Issues.** When the judgment debtor is other than a natural person, after entry of a judgment, and when a writ of execution may issue, a writ of garnishment shall be issued by the clerk of the court upon request. Under such writ of garnishment, the judgment creditor may garnish personal property of any description owned by, or owed to, such judgment debtor and in the possession or control of the garnishee. Issuance of a writ of execution shall not be required.

**(d) Service of Writ of Garnishment--Other Than Natural Person.** Service of the writ of garnishment--other than natural person shall be made in accordance with C.R.C.P. 4. No service of the writ or other notice of levy need be made on the judgment debtor.

**(e) Jurisdiction.** Service of the writ of garnishment--other than natural person shall give the court jurisdiction over the garnishee and personal property of any description, owned by, or owed to, a judgment debtor who is other than a natural person, in the possession or control of the garnishee.

**(f) Court Order on Garnishment Answer.** When the judgment debtor is other than a natural person:

(1) If the answer to a writ of garnishment shows the garnishee is indebted to such judgment debtor, the clerk shall enter judgment in favor of such judgment debtor and against the garnishee for the use of the judgment creditor for the amount of the indebtedness shown in such answer and if the judgment creditor is pro se, request such indebtedness be paid into the registry of the court. However, if the judgment creditor is represented by an attorney or is a collection agency licensed pursuant to section 5-16-101, et seq., C.R.S., the garnishee shall pay the funds directly to the attorney or licensed collection agency. In no event shall any judgment against the garnishee be more than the total amount due and owing on the judgment.

(2) If the answer to a writ of garnishment shows the garnishee to possess or control personal property of any description, owned by, or owed to, such judgment debtor, the court shall order the garnishee to deliver such property to the sheriff to be sold as upon execution and the court may enter any order necessary to protect the interests of the parties. Any proceeds received by the sheriff upon such sale shall be paid to the registry of the court to be applied to the judgment debt, but any surplus of property or proceeds shall be delivered to the judgment debtor.

**(g) Disbursement by Clerk of Court.** The clerk of the court shall disburse any funds in the registry of court to the judgment creditor without further application or order and enter such disbursement in the court records. The judgment creditor shall refund to the clerk of the court any disbursement in excess of the amount necessary to satisfy the judgment.

**SECTION 5. WRIT OF GARNISHMENT IN AID OF WRIT OF ATTACHMENT**

**(a) Definition.** "Writ of garnishment in aid of writ of attachment" means the exclusive procedure through which personal property of any kind of a defendant in an attachment action (other than earnings of a natural person) in the possession or control of the garnishee including the credits, debts, choses in action, or money owed to the judgment debtor, whether they are due at the time of the service of the writ or are to become due thereafter, is required to be held by a garnishee. For purposes of this rule, such writ is designated "writ of garnishment in aid of attachment."

Addenda 025

**(b) Form of Writ of Garnishment in Aid of Attachment and Form of Notice of Levy.** A writ of garnishment in aid of attachment shall be in the form and content of Appendix to Chapters 1 to 17A, Form 33, C.R.C.P. A Notice of Levy shall be in the form and content of Appendix to Chapters 1 to 17A, Form 34, C.R.C.P.

**(c) When Writ of Garnishment in Aid of Attachment Issues.** At any time after the issuance of a writ of attachment in accordance with C.R.C.P. 102, a writ of garnishment shall be issued by the clerk of the court upon request. Under such writ of garnishment the plaintiff in attachment may garnish personal property of any description, except earnings of a natural person, owed to, or owned by, such defendant in attachment and in the possession or control of the garnishee.

**(d) Service of Writ of Garnishment in Aid of Attachment.** Service of the writ of garnishment in aid of attachment shall be made in accordance with C.R.C.P. 4. If the defendant in attachment is a natural person, service of a notice of levy shall be made as required by C.R.S. 13-55-102. If the defendant in attachment is other than a natural person, a notice of levy need not be served on the defendant in attachment.

**(e) Jurisdiction.** Service of the writ of garnishment in aid of attachment shall give the court jurisdiction over the garnishee and personal property of any description (except earnings of a natural person), owned by, or owed to, a defendant in attachment in the possession or control of the garnishee.

**(f) Court Order on Garnishment Answer.**

(1) When the defendant in attachment is an entity other than a natural person:

(A) If the answer to a writ of garnishment in aid of attachment shows the garnishee is indebted to such defendant in attachment, the clerk shall enter judgment in favor of such defendant in attachment and against the garnishee for the use of the plaintiff in attachment for the amount of the indebtedness shown in such answer and order such amount paid into the registry of the court. In no event shall any judgment against the garnishee be more than the total amount due and owing nor shall such judgment enter for the benefit of a plaintiff in attachment until a judgment has been entered by the court against such defendant in attachment.

(B) If the answer to a writ of garnishment in aid of attachment shows the garnishee to possess or control personal property of any description, owned by, or owed to, such defendant in attachment, at any time after judgment has entered against such defendant in attachment, the court shall order the garnishee to deliver such property to the sheriff to be sold as upon execution and the court may enter any order necessary to protect the interests of the parties. Any proceeds received by the sheriff upon such sale shall be paid to the registry of the court to be applied to the judgment debt, but any surplus of property or proceeds shall be delivered to the judgment debtor/defendant in attachment.

(2) When the defendant in attachment is a natural person:

(A) If the answer to a writ of garnishment in aid of attachment shows the garnishee is indebted to such defendant in attachment, after judgment has entered against such defendant in attachment/judgment debtor upon a showing that such defendant in attachment has been served with a notice of levy as required by C.R.S. 13-55-102, the court shall enter judgment in favor of the defendant in attachment/judgment debtor and against the garnishee for the use of the plaintiff in attachment/judgment

Addenda 026

creditor for the amount of the indebtedness shown in such answer and order such amount paid into the registry of the court. In no event shall any judgment against the garnishee be more than the amount of the judgment against the defendant in attachment/judgment debtor.

(B) If the answer to a writ of garnishment in aid of attachment shows the garnishee to possess or control personal property owned by, or owed to, such defendant in attachment, after judgment has entered against such defendant in attachment/ judgment debtor and upon a showing that such defendant in attachment has been served with a notice of levy as required by C.R.S. 13-55-102, the court shall order the garnishee to deliver the property to the sheriff to be sold as upon execution and the court may enter any order necessary to protect the interests of the parties. Any proceeds received by the sheriff upon such sale shall be paid to the registry of the court to be applied to the judgment debt but any surplus of property or proceeds shall be delivered to the defendant in attachment/judgment debtor.

**(g) Disbursement by Clerk of Court.** The clerk of the court shall disburse any funds in the registry of the court to the judgment creditor without further application or order and enter such disbursement in the court records. The judgment creditor shall refund to the clerk of the court any disbursement in excess of the amount necessary to satisfy the judgment.

**SECTION 6. JUDGMENT DEBTOR'S OBJECTION--WRITTEN CLAIM OF EXEMPTION--HEARING**

**(a) Judgment Debtor's Objection to Calculation of Exempt Earnings or Objection and Request for Exemption of Earnings Pursuant to Section 13-54-104(2)(a)(I)(D), C.R.S., Under Writ of Continuing Garnishment.**

(1) If a judgment debtor objects to the initial or a subsequent calculation of the amount of exempt earnings, the judgment debtor shall have 7 days from the receipt of the copy of the writ of garnishment or calculation of the amount of exempt earnings for subsequent pay periods, within which to resolve the issue of such miscalculation by agreement with the garnishee.

(2) If the judgment debtor's objection to the calculation of exempt earnings is not resolved with the garnishee within 7 days upon good faith effort, the judgment debtor may file a written objection setting forth, with reasonable detail, the grounds for such objection. Such objection must be filed within 14 days from receipt of the copy of writ of garnishment or calculation of the amount of exempt earnings for subsequent pay periods.

(3) If the judgment debtor objects and requests an exemption of earnings pursuant to section 13-54-104(2)(a)(I)(D), C.R.S., the judgment debtor shall have no obligation to attempt to resolve the issue with the garnishee.

(4) If the judgment debtor objects and requests an exemption of earnings pursuant to section 13-54-104(2)(a)(I)(D), C.R.S., the judgment debtor shall file such objection and request in writing, setting out the grounds for such exemption and request. The judgment debtor may object to the calculation on hardship grounds at any time during the pendency of the garnishment.

(5) The written objection made under Section 6(a)(2) or Section 6(a)(4) of this rule shall be filed with the clerk of the court by the judgment debtor in the form and content of Appendix to Chapters 1 to 17A, Form 28, C.R.C.P.

(6) The judgment debtor shall, by certified mail, return receipt requested, immediately deliver a copy of such objection to the garnishee and the judgment creditor's attorney of record, or if none, to the judgment creditor. If the garnishee has been directed

to transmit the nonexempt earnings to an attorney or a collection agency licensed pursuant to section 5-16-101, et seq., C.R.S., then upon receipt of the objection, the garnishee shall transmit the nonexempt earnings to the clerk of the court.

(7) Upon the filing of a written objection, all proceedings with relation to the earnings of the judgment debtor in possession and control of the garnishee, the judgment creditor, the attorney for the judgment creditor, or in the registry of the court shall be stayed until the written objection is determined by the court.

**(b) Judgment Debtor's Claim of Exemption Under a Writ With Notice.**

(1) When a garnishee, pursuant to a writ with notice, holds any personal property of the judgment debtor, other than earnings, which the judgment debtor claims to be exempt, the judgment debtor, within 14 days after being served a copy of such writ as required by Section 2(d)(2) of this rule, shall make and file a written claim of exemption with the clerk of the court in which the judgment was entered.

(2) The claim of exemption to the writ of garnishment with notice shall be in the form and content of Appendix to Chapters 1 to 17A, Form 30, C.R.C.P.

(3) The judgment debtor shall, by certified mail, return receipt requested, deliver a copy of the claim of exemption to the garnishee and the judgment creditor's attorney of record, or if none, to the judgment creditor.

(4) Upon the filing of a claim of exemption to a writ with notice, all proceedings with relation to property in the possession or control of the garnishee shall be stayed until such claim is determined by the court.

**(c) Hearing on Objection or Claim of Exemption.**

(1) Upon the filing of an objection pursuant to Section 6(a) of this rule or the filing of a claim of exemption pursuant to Section 6(b) of this rule, the court in which the judgment was entered shall set a time for hearing of such objection or claim of exemption which hearing shall not be more than 14 days after the filing of such objection or claim of exemption.

(2) When an objection or claim of exemption is filed, the clerk of the court shall immediately inform the judgment creditor, the judgment debtor and the garnishee, or their attorneys of record, by telephone, by mail, or in person, of the date and time of such hearing.

(3) The clerk of the court shall document in the court record that notice of the hearing has been given in the manner required by this rule. Said documentation in the court record shall constitute a sufficient return and prima facie evidence of such notice.

(4) The court in which judgment was entered shall conduct a hearing at which all interested parties may testify, and shall determine the validity of the objection or claim of exemption filed by the judgment debtor and shall enter a judgment in favor of the judgment debtor to the extent of the validity of the objection or claim of exemption, which judgment shall be a final judgment for the purpose of appellate review.

(5) If the court shall find the amount of exempt earnings to have been miscalculated or if said property is found to be exempt, the court shall order the clerk of the court to remit the amount of over-garnished earnings, or the garnishee to remit such exempt property to the clerk of the court for the use and benefit of the judgment debtor within three (3) business days.

**(d) Objection or Claim of Exemption Within 182 days.**

(1) Notwithstanding the provisions of Section 6(a)(2), Section 6(a)(4) and Section 6(b)(1) of this rule, a judgment debtor failing to make and file a written objection or claim of exemption within the time therein provided, may, at any time within 182 days from receipt of the copy of the writ with notice or a copy of the writ of continuing garnishment or the calculation of the amount of exempt earnings, move the court in which the judgment was entered to hear an objection or claim of exemption as to any earnings or property levied in garnishment which the judgment debtor claims to have been miscalculated or which the judgment debtor claims to be exempt.

(2) A hearing pursuant to this subsection shall be held only upon a verified showing, under oath, of good cause which shall include: mistake, accident, surprise, irregularity in proceedings, newly discovered evidence, events not in the control of the judgment debtor, or such other grounds as the court may allow, but in no event shall a hearing be held pursuant to this subsection on grounds available to the judgment debtor as the basis of an objection or claim of exemption within the time periods provided in Section 6(a)(2) and Section 6(b)(1).

(3) At such hearing, if the judgment giving rise to such claim has been satisfied against property or earnings of the judgment debtor, the court shall hear and summarily try and determine whether the amount of the judgment debtor's earnings paid to the judgment creditor was correctly calculated and whether the judgment debtor's property sold as upon execution was exempt. If the court finds earnings to have been miscalculated or if property is found to be exempt, the court shall enter judgment in favor of the judgment debtor for the amount of the over-garnished earnings or such exempt property or the value thereof which judgment shall be satisfied by payment to the clerk of the court or the return of exempt property to the judgment debtor within three (3) business days.

**(e) Reinstatement of Judgment Debt.** If at any time the court orders a return of over-garnished earnings or exempt property or the value of such exempt property pursuant to Sections 6(c)(5) and 6(d)(3) of this rule, the court shall thereupon reinstate the judgment to the extent of the amount of such order.

**SECTION 7. FAILURE OF GARNISHEE TO ANSWER (ALL FORMS OF GARNISHMENT)**

**(a) Default Entered by Clerk of Court.**

(1) If a garnishee, having been served with any form of writ provided for by this rule, fails to answer or pay any nonexempt earnings as directed within the time required, the clerk of the court shall enter a default against such garnishee upon request.

(2) No default shall be entered in an attachment action against the garnishee until the expiration of 42 days after service of a writ of garnishment upon the garnishee.

**(b) Procedure After Default of Garnishee Entered.**

Addenda 029

Appellate Case: 23-1125    Document: 010110886503    Date Filed: 07/12/2023    Page: 69

(1) After a default is entered, the judgment creditor, plaintiff in attachment or any intervenor in attachment, may proceed before the court to prove the liability of the garnishee to the judgment debtor or defendant in attachment.

(2) If a garnishee is under subpoena to appear before the court for a hearing to prove such liability and such subpoena shall have been issued and served in accordance with C.R.C.P. 45 and shall fail to appear, the court shall thereupon enter such sanctions as are just, including, but not limited to, contempt of court, issuance of a bench warrant, reasonable attorney fees and the cost and expense of the judgment creditor, plaintiff in attachment or intervenor in attachment.

(3) Upon hearing, if the court finds the garnishee liable to the judgment debtor or defendant in attachment or in the possession or control of personal property of the judgment debtor or defendant in attachment at the time of service of the writ:

(A) The court shall enter judgment in favor of the judgment debtor or defendant in attachment against the garnishee for the use and benefit of the judgment creditor, plaintiff in attachment or intervenor in attachment, if the garnishee was liable to the judgment debtor or defendant in attachment;

(B) The court shall order the garnishee to deliver the personal property to the sheriff to be sold as upon execution in the same manner as section 4(f)(2) of this rule, if the garnishee was in the possession or control of personal property of the judgment debtor or defendant in attachment and may enter any order necessary to protect the interests of the parties. Provided, however, in the event that the garnishee no longer has possession or control over the personal property, the court may either enter a judgment for the value of such property at the time of the service of the writ or enter any order necessary to protect the interests of the parties or both.

(4) At any hearing the court shall make such orders as to reasonable attorney's fees, costs and expense of the parties to such hearing, as are just.

**SECTION 8. TRAVERSE OF ANSWER (ALL FORMS OF GARNISHMENT)**

**(a) Time for Filing of Traverse.** The judgment creditor, plaintiff in attachment or intervenor in attachment, may file a traverse of an answer to any form of writ provided by this rule provided such traverse is filed within the greater time period of 21 days from the date such answer should have been filed with the court or 21 days after such answer was filed with the court. The failure to timely file a traverse shall be deemed an acceptance of the answer as true.

**(b) Procedure.**

(1) Within the time provided, the judgment creditor, plaintiff in attachment, or intervenor in attachment, shall state, in verified form, the grounds of traverse and shall mail a copy of the same to the garnishee in accordance with C.R.C.P. 5.

(2) Upon application of the judgment creditor, plaintiff in attachment, or intervenor in attachment, the traverse shall be set for hearing before the court at which hearing the statements in the traverse shall be deemed admitted or denied.

Addenda 030

(3) Upon hearing of the traverse, if the court finds the garnishee liable to the judgment debtor or defendant in the attachment or in the possession or control of personal property of the judgment debtor or defendant in attachment at the time of service of the writ:

(A) The court shall enter judgment in favor of the judgment debtor or defendant in attachment against the garnishee for the use and benefit of the judgment creditor, plaintiff in attachment or intervenor in attachment, if the garnishee was liable to the judgment debtor or defendant in attachment;

(B) The court shall order the garnishee to deliver the personal property to the sheriff to be sold as upon execution in the same manner as section 4(f)(2) of this rule, if the garnishee was in the possession or control of personal property of the judgment debtor or defendant in attachment and may enter any order necessary to protect the interests of the parties. Provided, however, in the event that the garnishee no longer has possession or control over the personal property, the court may either enter a judgment for the value of such property at the time of the service of the writ or enter any order necessary to protect the interests of the parties or both.

(4) If a garnishee is under subpoena to appear for a hearing upon a traverse and such subpoena shall have been issued and served in accordance with C.R.C.P. 45, and shall fail to appear, the court shall thereupon enter such sanctions as are just, including, but not limited to, contempt of court, issuance of a bench warrant, reasonable attorney fees and the cost and expense of the judgment creditor, plaintiff in attachment or intervenor in attachment.

(5) At any hearing upon a traverse, the court shall make such orders as to reasonable attorney fees, costs and expense of the parties to such hearing as are just.

## SECTION 9. INTERVENTION (ALL FORMS OF GARNISHMENT)

Any person who claims an interest in any personal property of any description of a judgment debtor or defendant in attachment which property is the subject of any answer made by a garnishee, may intervene as provided in C.R.C.P. 24 at any time prior to entry of judgment against the garnishee.

## SECTION 10. SET-OFF BY GARNISHEE (ALL FORMS OF GARNISHMENT)

Every garnishee shall be allowed to claim as a set-off and retain or deduct all demands or claims on the part of the garnishee against any party to the garnishment proceedings, which the garnishee might have claimed if not summoned as a garnishee, whether such are payable or not at the time of service of any form or writ provided for by this rule.

## SECTION 11. GARNISHEE NOT REQUIRED TO DEFEND CLAIMS OF THIRD PERSONS (ALL FORMS OF GARNISHMENT)

(a) Garnishee With Notice. A garnishee with notice of the claim of a third person in any property of any description of a judgment debtor or defendant in attachment which is the subject of any answer made by the garnishee in response to any form of writ provided for by this rule shall not be required to defend on account of such claim, but shall state in such answer that the garnishee is informed of such claim of a third person.

(b) Court to Issue Summons. When such an answer has been filed, the clerk of the court, upon application, shall issue a summons requiring such third person to appear within the time specified in C.R.C.P. 12 to answer, set up, and assert a claim or be barred thereafter.

Addenda 031

Appellate Case: 23-1125    Document: 010110886503    Date Filed: 07/12/2023    Page: 71

**(c) Delivery of Property by Garnishee.**

(1) If the answer states that the garnishee is informed of the claim of a third person, the garnishee may at any time pay to the clerk of the court any garnished amount payable at the time of the service of any writ provided for by this rule, or deliver to the sheriff any property the garnishee is required to hold pursuant to any form of writ provided for in this rule.

(2) Upon service of the summons upon such third person pursuant to C.R.C.P. 4, the garnishee shall thereupon be released and discharged of any liability to any person on account of such indebtedness to the extent of any amount paid to the clerk of the court or any property delivered to the sheriff.

## SECTION 12. RELEASE AND DISCHARGE OF GARNISHEE (ALL FORMS OF GARNISHMENT)

**(a) Effect of Judgment.** A judgment against a garnishee shall release and discharge such garnishee from all claims or demands of the judgment debtor or defendant in attachment to the extent of all sums paid or property delivered by the garnishee pursuant to such judgment.

**(b) Effect of Payment.** Payment by a garnishee of any sums required to be remitted by such garnishee pursuant to Sections 1(k)(2) or 3(g)(2) of this rule shall release and discharge such garnishee from all claims or demands of the judgment debtor to the extent of all such sums paid.

**(c) Release by Judgment Creditor or Plaintiff in Attachment.** A judgment creditor or plaintiff in attachment may issue a written release of any writ provided by this rule. Such release shall state the effective date of the release and shall be promptly filed with the clerk of the court.

## SECTION 13. GARNISHMENT OF PUBLIC BODY (ALL FORMS OF GARNISHMENT)
Any writ provided for in this rule wherein a public body is designated as the garnishee, shall be served upon the officer of such body whose duty it is to issue warrants, checks or money to the judgment debtor or defendant in attachment, or, such officer as the public body may have designated to accept service. Such officer need not include in any answer to such writ, as money owing, the amount of any warrant or check drawn and signed prior to the time of service of such writ.

## EFFECTIVE DATE OF THIS RULE AND AMENDMENTS TO THIS RULE
[Repealed October 31, 1991, effective November 1, 1991].

**Credits**

Amended effective January 1, 1985; July 1, 1989; November 1, 1991; January 1, 1998; August 8, 2001; February 1, 2005; November 18, 2010; July 1, 2012; June 7, 2013; March 1, 2016; March 1, 2017; March 5, 2020; October 1, 2020.

**Editors' Notes**

**COMMENTS**

The Colorado Legislature amended Sections 13-54-104 and 13-54.5-101, C.R.S. (Section 7 of Chapter 65, Session Laws of Colorado 1991), which changed the definition of "earnings" applicable only to actions commenced on or after May 1, 1991. The

amendment impacts the ability to garnish certain forms of income, depending upon when the original action was commenced. Sections 1 and 3 of the Rule and Forms 26 and 31 have been revised to deal with this legislative amendment.

Notes of Decisions (203)

Rules Civ. Proc., Rule 103, CO ST RCP Rule 103
Current with amendments received through June 1, 2023.

---

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Addenda 033