**CASE NO. 23-1125**

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

| | |
|---|---|
| FIVE POINTS MANAGEMENT GROUP, INC., | |
|     Plaintiff-Appellant, | |
| v. | |
| CAMPAIGN, INC., a Delaware corporation; BRADLEY SEWELL, an individual, | |
|     Defendants-Appellees, | |
| HARTMAN ART STUDIOS, LLC, | |
|     Garnishee-Appellee. | |

On Appeal from the United States District Court
For the District of Colorado
The Honorable R. Brooke Jackson,
D.C. No. 1:20-CV-02599-RBJ

**GARNISHEE-APPELLEE'S ANSWER BRIEF**

Brad W. Schacht
David T. Brennan
OTTEN, JOHNSON, ROBINSON, NEFF
 & RAGONETTI, P.C.
950 17th Street, Suite 1600
Denver, Colorado 80202
(303) 825-8400
brad@ottenjohnson.com
dbrennan@ottenjohnson.com

***Attorneys for Garnishee-Appellee***

August 11, 2023

**ORAL ARGUMENT IS REQUESTED**

2922051.8

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS...............................................................................i

TABLE OF AUTHORITIES ........................................................... ii

STATEMENT OF PRIOR OR RELATED APPEALS...........................................v

STATEMENT OF THE CASE..............................................................1

SUMMARY OF ARGUMENT ...............................................8

ARGUMENT ....................................................................10

I.      Standard of Review.....................................................10

II.     The District Court Correctly Decided That There Was No Debt Owed By Hartman to Campaign that Could be Garnished. ...........................................10

III.    The District Court Correctly Decided That the Lease Was Not A Residential Lease, and That the Security Deposit Statute Did Not Apply to the Lease. ..................................................15

IV.     The District Court Correctly Decided That Campaign Had No Claim for Treble Damages; That Any Purported Treble Damage Claim Was Not Ripe; That Any Purported Treble Damage Claim Would Not Be Chose in Action; and that plaintiff had no standing to pursue a claim for treble damages. ..................................................19

        A.      There was no treble damages claim under the statute.......................19

        B.      The purported treble damages claim would not have been ripe. ........19

        C.      A treble damages claim would not be a "chose in action," even if it existed. ...........................................21

        D.      Plaintiff had no standing to garnish Campaign's purported treble damages claim under the Security Deposit Statute............................24

STATEMENT CONCERNING ORAL ARGUMENT..........................................25

CONCLUSION....................................................................26

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT..................27

CERTIFICATE OF DIGITAL SUBMISSION ......................................28

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*AA Wholesale Storage, LLC v. Swinyard*,
   488 P.3d 1213 (Colo. App. 2021).....................................................................25

*Ball v. Weller*,
   563 P.2d 371 (Colo. App. 1977)..................................................................18, 19

*Black v. Plumb*,
   29 P.2d 708 (1934).........................................................................................21

*Butler v. Merrill Lynch Bus. Fin. Servs., Inc.*,
   570 F. Supp. 2d 1047 (N.D. Ill. 2008)...............................................................13

*Carlson v. McCoy*,
   566 P.2d 1073 (Colo. 1977)...................................................20, 21, 22, 23, 24

*CB 2010 LLC v. Ithaca Coatings*,
   No. 12-13930, 2013 WL 2250168, at *9 (E.D. Mich. May 22, 2013)...............13

*Denver Post Corp. v. Ritter*,
   255 P.3d 1083 (Colo. 2011)..............................................................................16

*Donald Co. v. Dubinsky*,
   219 P. 209, 209 (Colo. 1923)...........................................................................21

*Edwards v. Kia Motors of America, Inc.*,
   8 So.3d 277, 280-81 (Ala. 2008) .....................................................................14

*Eruchalu v. U.S. Bank Nat. Ass'n*,
   No. 2:12-CV-01264-MMD, 2013 WL 6667702 ...................................................7

*Faris v. Williams WPC-I, Inc.*,
   332 F.3d 316 (5th Cir. 2003) ............................................................................13

*Flanders Elec. Motor Serv., Inc. v. Davall Controls & Eng'g*,
   831 P.2d 492 (Colo. App. 1992)........................................................................11

*Guarantee Tr. Life Ins. Co. v. Estate of Casper*,
418 P.3d 1163 (Colo. 2018)................................................................23

*Houle v. Adams State College*,
547 P.2d 926 (Colo. 1976)................................................................17

*Katz v. Fifield Realty Corp.*,
746 F.Supp.2d 1265, 1270-71 (S.D. Fla. 2010)..................................14

*Kruse v. McKenna*,
178 P.3d 1198 (Colo. 2008)..................................................22, 23, 24

*Lewis v. Taylor*,
375 P.3d 1205 (Colo. 2016)................................................................16

*Martin v. Allen*,
566 P.2d 1075 (Colo. 1977)..........................................................17, 22

*Mishkin v. Young*,
107 P.3d 393 (Colo. 2005)..........................................................17, 20, 24

*Mitchell v. Dixie Transp., Inc.*,
No. 1:16-CV-00336, 2019 WL 6137488 (N.D. Ga. Nov. 19, 2019)...................6

*Moore v. United States*,
No. 13-80034—CR, 2016 WL 11668975. (S.D. Fla. Aug. 24, 2016) ................7

*New Mexico Dep't of Game & Fish v. United States Dep't of the Interior*,
854 F.3d 1236 (10th Cir. 2017) ........................................................10

*Palmer v. A.H. Robins Co.*,
684 P.2d 187 (Colo. 1984)................................................................23

*Paylor v. Hartford Fire Ins. Co.*,
748 F.3d 1117 (11th Cir. 2014) ........................................................13

*People v. Hacke*,
524 P.3d, 8, 12 ..................................................................................16

*People v. Huckabay*,
463 P.3d 283 (Colo. 2020)................................................................16

iii

*Rooftop Restoration, Inc. v. American Family Mut. Ins. Co.*,
   418 P.2d 1173 (Colo. 2018) .......................................................................22, 23

*St. Vrain Valley Sch. Dist. RE–1J v. A.R.L.*,
   325 P.3d 1014 (Colo. 2014) .................................................................................16

*Total Renal Care, Inc. v. W. Nephrology & Metabolic Bone Disease, P.C.*,
   No. 08-CV-00513-CMA-KMT, 2010 WL 2108465 (D. Colo. May 24,
   2010) ..........................................................................................................................7

*Turner v. Lyon*,
   539 P.2d 1241 (Colo. 1975) .................................................................................22

*Walk-In Medical Centers, Inc. v. Breuer Capital Corporation et al.*,
   778 F.Supp. 1116 (D. Colo. 1991) .....................................................................21

**Statutes**

C.R.S. §13-20-101 .........................................................................................................23

C.R.S. §13-80-103(1) ....................................................................................................20

C.R.S. § 38-12-101 ........................................................................................................12

C.R.S. § 38-12-102 ..................................................................................................16, 17

C.R.S. §38-12-103 ...............................................................................................4, 12, 20

C.R.S. § 38-12-502(3) ..............................................................................................16, 17

C.R.S. § 38-12-502(8) ....................................................................................................17

C.R.S. § 38-12-502(9) ....................................................................................................16

**Other Authorities**

Colo. R. Civ. P. 69(g) ....................................................................................................25

Colo. R. Civ. P. 103 .......................................................................................................11

## **STATEMENT OF PRIOR OR RELATED APPEALS**

None.

## STATEMENT OF THE CASE

*Underlying Facts*

Hartman Art Studios, LLC ("**Hartman**" or "**Garnishee**"), founded and owned by Carl Hartman, owns the premises located at 3114 Larimer St., Denver, Colorado (the "**Premises**").  Affidavit of Carl Hartman ("**Hartman Affidavit**"), App. Vol. II at A252, ¶ 1.  Hartman entered into a lease agreement (the "**Lease**") to rent the Premises to Defendant Campaign, Inc. ("**Campaign**"), with an effective date of May 1, 2020. *Id.* at ¶ 2; Affidavit of Bradley A. Sewell ("**Sewell Affidavit**"), App. Vol. II at A271, ¶¶ 3-4.  Campaign, of which Defendant Bradley A. Sewell was the founder and a shareholder, was a company that designed metal-framed sofas, manufactured by La-Z-Boy, which could be shipped in a box. Hartman Affidavit, App. Vol. II at A252, ¶ 4; Sewell Affidavit, App. Vol. II at A271, ¶ 2.

The Lease was to run through March 31, 2025, with the option for Campaign to renew the lease for one additional five-year term.  Hartman Affidavit, App. Vol. II at A252, ¶ 5; Sewell Affidavit, App. Vol. II at A271, ¶ 5.  Pursuant to the Lease, Campaign tendered to Hartman a security deposit in the amount of $27,000. Hartman Affidavit, App. Vol. II at A252, ¶ 6; Sewell Affidavit, App. Vol. II at A271, ¶ 6.  Under Paragraph 6 of the Lease, Campaign was to pay monthly rent pursuant to the following schedule:

2922051.8

| Dates | % Growth | Monthly Base Rent | Annual Base Rent |
|---|---|---|---|
| **5/1/2020 – 3/31/2021** | 0 | $13,500 | $162,000 |
| **4/1/2021 – 3/31/2022** | 2.5% | $13,838 | $166,050 |
| **4/1/2022 – 3/31/2023** | 2.5% | $14,183 | $170,201 |
| **4/1/2023 – 3/31/2024** | 2.5% | $14,538 | $174,456 |
| **4/1/2024 – 3/31/2025** | 2.5% | $14,901 | $178,818 |

Hartman Affidavit, App. Vol. II at A253, ¶ 7; Sewell Affidavit, App. Vol. II at A272, ¶7.

Campaign made only three monthly rent payments: for September, October and November 2020. Hartman Affidavit, App. Vol. II at A253, ¶ 8; Sewell Affidavit, App. Vol. II at A272, ¶ 8. Campaign paid a total of $40,500 in rent during its tenancy. Hartman Affidavit, App. Vol. II at A253, ¶ 9; Sewell Affidavit, App. Vol. II at A272, ¶ 9. In October 2020, La-Z-Boy terminated its supply agreement with Campaign, resulting in Campaign's inability to generate revenue from product sales. Sewell Affidavit, App. Vol. II at A272, ¶ 10. Campaign's board of directors and shareholders then voted to dissolve Campaign on December 18, 2020. Sewell Affidavit, App. Vol. II at A272, ¶ 11; *accord* Hartman Affidavit, ¶ 10. As a result, Campaign's assets were sold off, and the Lease was terminated. Sewell Affidavit, App. Vol. II at A272, ¶ 12; *accord* Hartman Affidavit, App. Vol. II at A253, ¶ 11.

As of the date of its dissolution, Campaign had failed to pay rent for the months of May, June, July, August and December 2020. Hartman Affidavit, App.

2922051.8

Vol. II at A253, ¶ 12; Sewell Affidavit, App. Vol. II at A272, ¶ 13.   Campaign's delinquent past rent for those five months totaled $67,500.  Hartman Affidavit, App. Vol. II at A253, ¶ 13; Sewell Affidavit, App. Vol. II at A272, ¶ 14.  Campaign also paid no amounts toward future rents owed under the Lease.  *Id.*

Pursuant to Paragraphs 10 and 11 of the Lease, Hartman was entitled to apply the security deposit toward any outstanding rent payments at the termination of the Lease.   Lease, App. Vol. II at A257, ¶¶ 10-11; Hartman Affidavit, App. Vol. II at A253, ¶ 14; Sewell Affidavit, App. Vol. II at A272, ¶ 15.  Hartman, Campaign, and Mr. Sewell all agreed that Hartman would keep the security deposit associated with Campaign's Lease as a setoff against unpaid rents. Hartman Affidavit, App. Vol. II at A253, ¶ 15; Sewell Affidavit, App. Vol. II at A272, ¶ 16.   In return, Hartman agreed that it would not pursue collection of the additional unpaid rent against Mr. Sewell under his personal guarantee. Hartman Affidavit, App. Vol. II at A253, ¶ 16; Sewell Affidavit, App. Vol. II at A273, ¶ 17.   Because of that agreement, Hartman did not send a written accounting of the retention of the security deposit to Campaign, nor did Campaign or Mr. Sewell expect any kind of written statement or accounting for the security deposit.  Hartman Affidavit, App. Vol. II at A254, ¶ 17; Sewell Affidavit, App. Vol. II at A273, ¶ 18.

*Procedural History*

On October 26, 2021, the District Court below entered an Amended Final Judgment in favor of Plaintiff and against Campaign and Mr. Sewell in the underlying action – a lawsuit which was unrelated to Hartman, the Lease or the Premises.  App. Vol. I at A115-116.  On May 18, 2022, Plaintiff served a Writ of Continuing Garnishment (the "**Writ**") on Hartman.   App. Vol. I at A117-A119. Hartman filed its answer to the Writ (the "**Answer**") on June 13, 2022. App. Vol. I at A120-A121. In its Answer, Hartman indicated that it did not possess or control any personal property of Campaign, and that the $27,000 security deposit that it had previously held under the Lease had been set off against unpaid rent.  *Id.*

On July 1, 2022, Plaintiff filed a Traverse of Answer to Writ of Garnishment (the "**Traverse**").  App. Vol. I at A122-A142.  In the Traverse, Plaintiff took the position that the Lease was governed by a Colorado statute governing security deposits under leases of dwelling units to individuals, C.R.S. §38-12-103 (the "**Security Deposit Statute**"), and that that statute required Hartman to return Campaign's security deposit or deliver a written statement indicating the setoff of the security deposit within sixty days after the termination of the Lease.  *Id.* at A129. Plaintiff further argued that Hartman still held the security deposit because a setoff had not occurred.  *Id.* at A131-A134.  Lastly, Plaintiff argued that the Security

Deposit Statute allowed it to seek treble damages for a landlord's willful failure to return a security deposit; that Hartman had willfully retained Campaign's security deposit; that the treble damage penalty under the Security Deposit Statute was a "chose in action" held by Campaign; and that in addition to the $27,000 security deposit, Plaintiff was entitled to $81,000 in treble damages, plus attorneys' fees. *Id.* at A135-A140.

Hartman filed its Response to the Traverse (the "**Response**") on February 26, 2023.  Response, App. Vol. II at A237-290.  In the Response, Hartman pointed out that the Lease was a commercial lease between two business entities (a limited liability company and a corporation), and that the Security Deposit Statute does not apply to it. *Id.* at A242-A245.  The Response further pointed out that (as supported by the attached Hartman and Sewell Affidavits), following the termination of the Lease, Hartman and Campaign agreed that (1) Hartman would retain the $27,000 security deposit as a setoff against over $67,500 in past rent owed by Campaign, and (2) Hartman would not pursue Campaign or Mr. Sewell (under his guarantee of the Lease) for further amounts. *Id.* at A245-A247; A253-A254; A272-273.  The Response also made clear that even if a treble damages penalty under the Security Deposit Statute existed (which it did not, because the Lease was not a residential lease, the Security Deposit Statute did not apply, and the security deposit had been

5

properly set off by agreement of the parties), such a statutory penalty would not be a "chose in action" under Colorado law, to which the Writ could attach. *Id.* at A247-A248.

Finally, the Response pointed out that the Security Deposit Statute only permits a claim for treble damages if the tenant serves a statutory notice on the landlord and the landlord willfully retains the security deposit for seven days thereafter. That simply did not happen here. Hartman did not withhold the security deposit against Campaign's will. Instead, Hartman and Campaign agreed to the setoff of the security deposit against unpaid rent in return for Hartman's forgiveness of the remaining damages caused by Campaign's breaches and for Hartman not enforcing Mr. Sewell's guarantee. *Id.* at A248-A249. Thus, the seven day notice required of the tenant was never given and the penalty provisions of the statute were never invoked.

Plaintiff filed a thirty-page Reply to the Response. The District Court stated that Plaintiff's thirty-page Reply "is so far in excess of [the District Court's] practice standard page limit that I have disregarded everything beyond the first five pages." District Court Order (defined below), App. Vol. II at A465.[1]

---

[1] The District Court was justified in doing so, and did not abuse its discretion. See, Hon. Brooke Jackson Practice standards effective 12/08/2020; *see also*, *e.g., Mitchell v. Dixie Transp., Inc.*, No. 1:16-CV-00336, 2019 WL 6137488, at *1 (N.D.

The District Court entered its Order Regarding Traverse (the "**District Court Order**") on March 16, 2023.  In the District Court Order, the court found and concluded as follows:

1.    There was no debt owed by Hartman to Campaign, because the security deposit had been properly set off against Campaign's debt to Hartman for nonpayment of rent (District Court Order, App. Vol. II at A465-A467) ("[P]laintiff has come forward with no evidence that Hartman and Campaign did not reach an agreement that Campaign (*sic*) would retain the security deposit as a setoff against Campaign's unpaid rent in exchange for Hartman's agreement not to pursue a claim against Mr. Sewell under his personal guaranty.");

2.    The Plaintiff's "effort to garnish Hartman's purported obligation to pay treble damages to Campaign because of Hartman's willful retention of Campaign's security deposit in violation of the [Security Deposit Statute] fails on multiple grounds," including:

---

Ga. Nov. 19, 2019) (court not considering any argument made in the brief beyond the page limit); *Eruchalu v. U.S. Bank Nat. Ass'n*, No. 2:12-CV-01264-MMD, 2013 WL 6667702, at *3 (D. Nev. Dec. 17, 2013 (same); *Moore v. United States*, No. 13-80034—CR, 2016 WL 11668975. At *4 (S.D. Fla. Aug. 24, 2016) (same); *Total Renal Care, Inc. v. W. Nephrology & Metabolic Bone Disease, P.C.*, No. 08-CV-00513-CMA-KMT, 2010 WL 2108465, at *1 (D. Colo. May 24, 2010) (denying competing motions for summary judgment on the basis of exceeding page limits).

      a.     that the Security Deposit Statute does not apply to the Lease (District Court Order, App. Vol. II at A466-A467) ("[T]he statute applies, by the plain meaning of its terms, to residential leases between a landlord and an individual tenant or tenants.");

      b.     that even if the statute did apply, it was not violated by Hartman; and

      c.     that, in any event, Plaintiff did not demonstrate that Hartman's purported obligation to pay treble damages to Campaign was:

           i.     ripe; or

           ii.     a chose in action that could be garnished; and

      d.     that Plaintiff did not demonstrate that it had standing to garnish such a claim.

District Court Order, App. Vol. II at A467.  Accordingly, the District Court correctly denied Plaintiff's Traverse of Hartman's Answer to the Writ.  Plaintiff appeals from that decision.

## SUMMARY OF ARGUMENT

Plaintiff, a third party creditor of Campaign and Mr. Sewell, and a stranger to the Lease at issue, seeks to disregard the undisputed agreement of Hartman and Campaign/Sewell to allow the setoff of the security deposit against the rents owing

under the Lease in return for Hartman's agreement that it would not pursue its remaining remedies arising from Campaign's breach of the Lease. Plaintiff goes even further by suggesting that it is entitled to recover treble damages and attorneys' fees under a statute that doesn't apply here and is for the benefit of tenants (not creditors). Plaintiff's argument puts the cart before the horse. While the Plaintiff focuses on the applicability of the Security Deposit Statute, that is not the dispositive issue in this case. Indeed, the trial court's well supported finding that a valid setoff occurred, which eliminated any funds that could be garnished, is the end of the inquiry. Based on that finding, it is irrelevant whether the Security Deposit Statute applied. Essentially, Plaintiff argues that landlords and tenants are not free to settle their disputes like other contracting parties are because of a statute that requires a statement articulating the reasons for withholding a security deposit. In addition to the other reasons articulated below, that statute simply doesn't fit here. Hartman did not withhold the security deposit against the will of the tenant. After it had defaulted, the tenant agreed to a setoff because it eliminated liability for the other damages to which Hartman was entitled because of the tenant's breaches.

## <u>ARGUMENT</u>

### I.    STANDARD OF REVIEW

As the Plaintiff concedes, this Court reviews the District Court Order for abuse of discretion.  Brief of Plaintiff-Appellee at 8.  Under that standard, this Court gives great deference to the result reached by the District Court.  "An abuse of discretion occurs when a decision is premised on an erroneous conclusion of law or where there is no rational basis in the evidence for the ruling." *New Mexico Dep't of Game & Fish v. United States Dep't of the Interior*, 854 F.3d 1236, 1245 (10th Cir. 2017).

### II.    THE DISTRICT COURT CORRECTLY DECIDED THAT THERE WAS NO DEBT OWED BY HARTMAN TO CAMPAIGN THAT COULD BE GARNISHED.

As noted previously, after the termination of the Lease, Hartman and Campaign resolved the default in rent payments and the issue of Sewell's guarantee liability by agreeing that (a) Hartman would apply the security deposit to the unpaid rent, and (b) Hartman would not enforce Mr. Sewell's guarantee.  Hartman Affidavit, App. Vol. II at A253, ¶ 15-16; Sewell Affidavit, App. Vol. II at A272, ¶ 16-17.

Section 10 of Colo. R. Civ. P. 103 permits a garnishee to set off against the property to be garnished any claim it has against the debtor:

> Every garnishee shall be allowed to claim as a set-off and retain or deduct all demands or claims on the part of the garnishee against any party to the garnishment proceedings, which the garnishee might have claimed if not summoned as a garnishee, whether such are payable or not at the time of service of any form or writ provided for by this rule.

Colo. R. Civ. P. 103, § 10. Where the debts the judgment debtor owes the garnishee exceed those of the garnishee to the judgment debtor, the garnishee has no liability to the judgment debtor. *Flanders Elec. Motor Serv., Inc. v. Davall Controls & Eng'g*, 831 P.2d 492, 495 (Colo. App. 1992).

Accordingly, even if the resolution among Hartman, Campaign and Mr. Sewell had not been made at the time that the Writ was served (which it clearly had), Campaign would have owed Hartman at least $67,500, which exceeded the $27,000 security deposit which would have been held by Hartman. Hartman would have been entitled to set off the full amount of the security deposit. *See* Colo. R. Civ. P. 103 § 10.

The District Court found that "[P]laintiff has come forward with no evidence that Hartman and Campaign did not reach an agreement that Campaign would retain the security deposit as a setoff against unpaid rent in exchange for Hartman's agreement not to pursue a claim against Mr. Sewell under his personal guaranty."

11

District Court Order, App. Vol. II at A465.  Moreover, the District Court concluded that "Plaintiff's assertion that Mr. Hartman and Mr. Sewell are misrepresenting that fact has no basis in any fact brought to the Court's attention."  *Id.* at A466.  The District Court was correct in that regard, and did not abuse its discretion.

While Plaintiff's argument is not entirely clear, it appears that Plaintiff asserts that the setoff agreement between Hartman and Campaign was invalid because it was not accompanied by a statement under the Security Deposit Statute.  To the extent that that is Plaintiff's argument, it fails.  The Security Deposit Statute was enacted to protect the interests of both tenants and landlords.  *See* C.R.S. § 38-12-101.  It is designed to prevent the wrongful withholding of security deposits by landlords from tenants in residential leases.  Here, Hartman did not withhold the security deposit against the will of Campaign.  Instead, the parties reached an agreement regarding the disposition of the security deposit, *after defaults under the lease*, under which Campaign and Mr. Sewell received substantial benefits—a release of additional liability under the Lease.

Even if the Security Deposit Statute applied here, its requirements were waived by that agreement.  Plaintiff may argue that the Security Deposit Statute precludes a waiver of its provisions.  C.R.S. § 38-12-103(7) provides that any provision of a residential lease which purports to waive any part of the statute which

2922051.8

benefits a tenant is void against public policy. However, even if the Security Deposit Statute did apply to the Campaign Lease, that provision does not apply here. There was no purported waiver in the Campaign Lease. Instead, Campaign waived its rights retrospectively as part of an arms-length settlement agreement under which it received substantial benefits. That kind of retrospective waiver is not prohibited by the Security Deposit Statute. Such retrospective waivers are valid even in the face of statutory prohibitions.

For example, while prospective waivers of rights under the Family Medical Leave Act are unenforceable, retrospective waivers, such as those contained in a severance agreement, are allowed. See, e.g., *Paylor v. Hartford Fire Ins. Co.*, 748 F.3d 1117, 1124 (11th Cir. 2014); *Faris v. Williams WPC-I, Inc.*, 332 F.3d 316, 321 (5th Cir. 2003) (same and discussing similar federal statutes where courts have ruled that a party may not waive their rights prospectively but allowed the party to waive retrospective claims through settlement); *Butler v. Merrill Lynch Bus. Fin. Servs., Inc.*, 570 F. Supp. 2d 1047, 1052 (N.D. Ill. 2008) (holding that, even where the FMLA prohibits the waiver of rights under the statute, FMLA claims may be waived retrospectively; i.e. the statute does prohibit the waiver of claims when it is done with full knowledge of the claims in a settlement agreement); *see also CB 2010 LLC v. Ithaca Coatings*, No. 12-13930, 2013 WL 2250168, at *9 (E.D. Mich. May 22,

13

2013) (discussing the distinction between prospective waivers of statutory rights and retrospective waivers of statutory rights) (Regarding prospective waivers, such waivers "must be 'particularly scrutinized as to the intent of the parties.'") ("Both retrospective and contemporaneous waivers are interpreted according to 'normal contract principles.'").

Courts facing other statutory waiver prohibitions have reached similar conclusions. For example in *Edwards v. Kia Motors of America, Inc.*, the Alabama Supreme Court held that a provision in the Alabama Automobile Franchise Act which barred "any waivers", did not apply to post-dispute retrospective waivers and releases. 8 So.3d 277, 280-81 (Ala. 2008). Likewise, in *Katz v. Fifield Realty Corp*., the Court held that a retrospective waiver of claims under the Interstate Land Sales Act was valid, despite a statutory prohibition of waivers. 746 F.Supp.2d 1265, 1270-71 (S.D. Fla. 2010).

Therefore, even if the Security Deposit Statute did apply to the Campaign Lease, Plaintiff's argument that the setoff agreement between Hartman and Campaign was invalid fails. When the Writ was served, there were no funds to be garnished, and the Court not need not address the remaining issues raised by Plaintiff regarding the applicability of the Security Deposit Statute.

### III.    THE DISTRICT COURT CORRECTLY DECIDED THAT THE LEASE WAS NOT A RESIDENTIAL LEASE, AND THAT THE SECURITY DEPOSIT STATUTE DID NOT APPLY TO THE LEASE.

The Lease begins with the language "This Commercial Lease . . . ." App. Vol. II at A255. Later in the Lease, it states that, "The Property address *may not be used* or stated on government forms as a personal home, residence, or primary personal address." *Id.* at A258, ¶17 (emphasis added). The District Court correctly determined that the Lease was a "commercial lease between businesses." *Id.* at A467.

Plaintiff's assertion that "[t]here is no rational basis in evidence for the district court's conclusion that the Lease was a commercial lease" is therefore clearly incorrect, along with its argument that "the district court was required to go beyond the four corners of the Lease to determine the intent of the parties." (Brief for Plaintiff-Appellant at 9.) No such external inquiry was necessary. The District Court based its finding on the language of the Lease itself, and the fact that it was a lease between a limited liability company Landlord and a corporation Tenant.

But the District Court's finding that the Lease was a commercial lease was not made in isolation. Rather, it was made as part of its analysis of whether the Security Deposit Statute applies to the Lease; the District Court correctly concluded that it does not. The meaning and scope of the Security Deposit Statute is a question

15

of statutory interpretation. "The primary goal of statutory interpretation is to ascertain and give effect to the legislature's intent." *Lewis v. Taylor*, 375 P.3d 1205, 1209 (Colo. 2016) (citing *St. Vrain Valley Sch. Dist. RE–1J v. A.R.L.*, 325 P.3d 1014, 1019 (Colo. 2014)). "To do so, we look to the plain meaning of the statutory language and consider it within the context of the statute as a whole." *Id.* (citing *Denver Post Corp. v. Ritter*, 255 P.3d 1083, 1088 (Colo. 2011)). If the statute's language is "clear and unambiguous on its face," the Court simply applies it as written, and the analysis is complete. *People v. Hacke*, 524 P.3d, 8, 12 (quoting *People v. Huckabay*, 463 P.3d 283, 286 (Colo. 2020)).

The terms used in Security Deposit Statute are defined in section 38-12-102 ("**Section 102**"). *See* C.R.S. § 38-12-102. Under Section 102, "'Tenant' has the meaning set forth in section 38-12-502(9)." C.R.S. § 38-12-102(7). That section defines "tenant" as "a person entitled under a rental agreement to occupy a dwelling unit to the exclusion of others." C.R.S. § 38-12-502(9). "Dwelling unit," in turn, means "a structure or the part of a structure that is used as a home, residence, or sleeping place by a tenant." C.R.S. § 38-12-502(3).

Section 102 defines "security deposit" as "any advance or deposit of money, regardless of its denomination, the primary function of which is to secure the performance of a rental agreement for a residential premises or any part of a

16

residential premises." C.R.S. 38-12-102(6). "Residential premises," is defined as "a dwelling unit, the structure of which the unit is part, and the common areas." C.R.S. § 38-12-502(8).

Thus, the Security Deposit Statute only applies to leases between a landlord and a person, for that person's use of a "home, residence, or sleeping place." *See* C.R.S. § 38-12-502(3). Based on the plain and ordinary meanings of its terms, the Act does not apply to leases in which the "tenant" is a corporation; a corporation can have no home or residence, nor can it sleep. *See* C.R.S. § 38-12-502(3). In other words, the Act applies only to what is commonly understood to be a residential lease—the renting of a residence (be it a house, an apartment, or any other home) by a landlord to a living, breathing tenant.

That interpretation of the Security Deposit Statute is consistent with the Legislature's purpose in passing it. The Act was "designed to assist tenants in vindicating their legal rights and to equalize the disparity in power which exists between landlord and tenant." *Mishkin v. Young*, 107 P.3d 393, 399 (Colo. 2005) (citing *Martin v. Allen*, 566 P.2d 1075, 1076 (Colo. 1977)). "The Act was passed to control the practices of landlords who withhold, without justification, their tenants' damage deposits." *Id.* (citing *Houle v. Adams State College*, 547 P.2d 926, 927 (Colo. 1976)). The Act provides for an award of attorney fees to a victorious tenant

17

to prevent the award of damages from being reduced by fees and "to encourage the private bar to enforce its provisions in actions which generally involve small amounts of money." *Ball v. Weller*, 563 P.2d 371, 372 (Colo. App. 1977).

None of those purposes is served by construing the Security Deposit Statute to apply to commercial tenants. There is not a consistent, notable disparity in power between a landlord and a corporate tenant—and where there is a disparity, it is sometimes the tenant that wields the power. Nor is there a trend of perfunctory retention of security deposits under commercial leases, as there is (or was) in the realm of residential leases, as a consequence of the disparity in power. Nor are deposits for commercial leases typically "small amounts of money"; indeed, in this case, the security deposit was $27,000.

The Security Deposit Statute—the sole basis for Plaintiff's garnishment action—has no application to the Lease between Hartman and Campaign. Campaign, the tenant under the Lease, is not a "person." As a corporation, Campaign cannot sleep, and therefore has no "sleeping place." Nor does a corporation have a "home" or a "residence." Ultimately, under the definitions of the Act, the Premises is neither a "residential premises" nor a "dwelling unit"; Campaign was not a "tenant"; and the $27,000 deposit was never a "security deposit."

The District Court endorsed the foregoing analysis of the intent and scope of the Security Deposit Statute, and concluded that it does not apply to the Lease. District Court Order, App. Vol. II at A479-A480.  Since the only basis for Plaintiff's garnishment action was the purported technical violation of a statute that does not apply to the Lease at hand, the District Court was entirely correct in denying Plaintiff's Traverse.

IV.    **THE DISTRICT COURT CORRECTLY DECIDED THAT CAMPAIGN HAD NO CLAIM FOR TREBLE DAMAGES; THAT ANY PURPORTED TREBLE DAMAGE CLAIM WAS NOT RIPE; THAT ANY PURPORTED TREBLE DAMAGE CLAIM WOULD NOT BE CHOSE IN ACTION; AND THAT PLAINTIFF HAD NO STANDING TO PURSUE A CLAIM FOR TREBLE DAMAGES.**

A.    <u>**There was no treble damages claim under the statute.**</u>

Plaintiff's purported claim for treble damages and attorneys' fees would arise, if at all, under the Security Deposit Statute, which the District Court concluded does not apply to the Lease.  *See supra* Section II.  Accordingly, the claim for treble damages fails.  District Court Order, App. Vol. II at A467.  The Court further concluded that even if the Security Deposit Statute did apply, the statute was not violated.  *Id.*

B.    <u>**The purported treble damages claim would not have been ripe.**</u>

The Court also correctly concluded that Plaintiff failed to demonstrate that the treble damage claim was ripe.  *Id.*  That conclusion relates to the provision in the

19

Security Deposit Statute which requires that, in order for treble damages to be claimed, the withholding of the security deposit must be willful and wrongful. *Mishkin*, 107 P.3d at 399. Willfulness must be established by the tenant giving its landlord a seven-day notice, and the landlord continuing to withhold the security deposit. *Id.* at 397; *see also* C.R.S. § 38-12-103(3)(a) ("[T]he tenant has the obligation to give notice to the landlord of his intention to file legal proceedings a minimum of seven days prior to filing said action."). Of course, Campaign never gave such a notice because it had reached a settlement agreement with Hartman. Because it was never given, there can be no claim for treble damages.

It must be reiterated that the Security Deposit Statute does not apply here. But even if it did, no seven-day notice was ever given, and no claim to treble damages ripened. District Court Order, App. Vol. II at A467.

Moreover, actions for statutory penalties must be commenced within one year after the cause of action accrues. C.R.S. §13-80-103(1)*; see also Carlson v. McCoy*, 566 P.2d 1073, 1074 (Colo. 1977) ("[T]he treble damages provision of section 38-12-103, C.R.S. 1973, is governed by the one year statute of limitations.") The Lease terminated on December 18, 2020. Sewell Affidavit, App. Vol. II at A272, ¶ 12; *accord* Hartman Affidavit, App. Vol. II at A253, ¶ 11. No seven-day notice was ever given by the tenant, Campaign. Counsel for Plaintiff purported to give a seven-

20

day notice by email, , but that email was dated June 21, 2022, long after the applicable statute of limitations had expired. [2]  *See* App. Vol. I at A230.

### C. A treble damages claim would not be a "chose in action," even if it existed.

Next, the District Court correctly rejected Plaintiff's assertion that the claim for treble damages was a "chose in action" to which the Writ could attach.  A statutory penalty, such as a claim for treble damages under the Security Deposit Statute, is not a "chose in action."  A "chose in action" cannot exist absent contractual liability.  "A garnishment action may properly be maintained to enforce *contractual liability* of a garnishee to a judgment debtor for the use and benefit of the judgment creditor."  *Walk-In Medical Centers, Inc. v. Breuer Capital Corporation et al.*, 778 F.Supp. 1116, 1122 (D. Colo. 1991) (emphasis added) (citing *Black v. Plumb*, 29 P.2d 708, 710 (1934)); *see also Donald Co. v. Dubinsky*, 219 P. 209, 209 (Colo. 1923) ("The discharge of the garnishee was right, because the action was in tort, and the statute permits attachment only in aid of actions upon contract.").

The treble damages provision of the Security Deposit Statute is penal in nature. *See Carlson v. McCoy*, 566 P.2d 1073, 1075 (1977).  The Colorado Supreme

---

[2] Because Plaintiff's counsel's "notice" was untimely under the applicable statute of limitations, this Court need not reach the question whether Plaintiff, a stranger to the Lease, may purport to give a notice that the statute requires to be given, if at all, by the tenant itself.

Court has indicated that "the increased damages provided by this statute serve a punitive purpose." *Id.* (citing *Turner v. Lyon*, 539 P.2d 1241, 1243 (Colo. 1975)). In other words, the treble damages are statutory penalties, and are not, therefore, dependent on contract. Because Plaintiff's claim for treble damages is not based on the enforcement of contractual liability, the District Court correctly concluded that the purported claim for treble damages was not a "chose in action" and could not be garnished. District Court Order, App. Vol. II at A467.

Plaintiff's assertion that *Carlson* is distinguishable is unfounded. The court in that case clearly found that "the increased damages provided by [the Security Deposit Statute] serve a punitive purpose." *Carlson*, 566 P.2d at 1075. The Court went on to conclude that the applicable statute of limitations was one year, but the decision was not, as Plaintiff argues, "limited to determining the classification of actions for purposes of statutes of limitations." (Brief for Plaintiff-Appellant at 22.) Plaintiff's crabbed reading of *Carlson* is not supported by the actual language of that decision. *See Carlson*, 566 P.2d at 1075.

Plaintiff also cites the decision in *Rooftop Restoration, Inc. v. American Family Mut. Ins. Co.*, 418 P.2d 1173 (Colo. 2018) (hereinafter "*Rooftop*"), as "call[ing] into question" the ruling in *Carlson*. (Brief for Plaintiff-Appellant at 22.) But in *Rooftop*, the court simply chose not to apply a test which a prior decision

22

(*Kruse v. McKenna*, 178 P.3d 1198 (Colo. 2008)) had formulated based on *Carlson* and another prior decision (*Palmer v. A.H. Robins Co.*, 684 P.2d 187 (Colo. 1984). The court in *Rooftop* found the test inappropriate for that particular case (which involved the statute of limitations for claims for unreasonable delay or denial of insurance benefits), but it expressly <u>did not</u> overrule the *Kruse* test, let alone any aspect of *Carlson* or *Palmer*.  *Rooftop*, 418 P.3d at 1176.

Plaintiff's discussion of the opinion in *Guarantee Tr. Life Ins. Co. v. Estate of Casper,* 418 P.3d 1163 (Colo. 2018) (hereinafter "*Casper*") is wholly inapposite here.  (Brief for Plaintiff-Appellant at 23-24.)  The court's analysis in *Casper* which implicated the *Kruse* decision dealt with the "Survival Statute," C.R.S. §13-20-101, which governs what causes of action survive the death of either the plaintiff or the defendant.  *See Casper*, 418 P.3d at 1167-68. The court in *Casper* found that the opinion in *Kruse* had "intimated" that the Survival Statute's limitation on penalties and punitive damages applies when <u>either</u> party dies.  *Id.* at 1168.

Because the *Casper* court found that the text of the Survival Statute expressly states that punitive damages are unavailable when the <u>defendant</u> dies, it went on to say that "*to the extent* our decision in *Kruse* failed to give meaning to the plain language of the survival statute," i.e., to the extent that it precluded punitive damages when either party dies, "that decision is overruled."  *Id.* at 1169 (emphasis added).

That very limited overruling of a portion of the *Kruse* decision is interesting, perhaps, but it is unrelated to the issue at hand: whether the treble damages provision in the Security Deposit Statute is a penalty, not a contractual claim—and therefore not a "chose in action."  The District Court Order correctly ruled that the treble damages claim is a penalty and not a chose in action, and its ruling is amply supported by the holding in *Carlson v. McCoy*.

Lastly, Plaintiff cites *Mishkin* for the proposition that the Security Deposit Statute should be "liberally construed in favor of tenants."  (Brief for Plaintiff-Appellant at 24.); *see also Mishkin*, 107 P.3d at 399.  But of course, *Mishkin* says nothing about liberal construction of the Security Deposit Act in favor of <u>creditors</u> of commercial tenants, such as Plaintiff. *See Mishkin*, 107 P.3d at 399.  The actual tenant here, Campaign, made a voluntary and beneficial settlement transaction with its landlord, which enabled the tenant and the guarantor to avoid further liability under the Lease.

### D.    <u>Plaintiff had no standing to garnish Campaign's purported treble damages claim under the Security Deposit Statute.</u>

Plaintiff attempts to challenge the District Court's conclusion that Plaintiff had no standing to garnish the alleged treble damages claim of Campaign.  (Brief of Plaintiff-Appellant at 25-28.)  That challenge fails right out of the gate:  Plaintiff states that "as against a garnishee a judgment creditor can garnish 'choses in action'

24

belonging to the judgment debtor." *Id.* at 25.  However, as discussed at length in section IV(C) above, any treble damages claim (if it existed) would be a penalty, not a chose in action, and could not be garnished by Plaintiff.

Plaintiff's perplexing discussion of *AA Wholesale Storage, LLC v. Swinyard*, 488 P.3d 1213 (Colo. App. 2021) (hereinafter "*AA Wholesale*") does nothing to advance Plaintiff's standing argument. (Brief of Plaintiff-Appellant at 25-28.)  *AA Wholesale* is a case in which the Colorado Court of Appeals upheld the <u>denial</u> of a judgment creditor's request to compel turnover of choses in action under Colo. R. Civ. P. 69(g).  *AA Wholesale*, 488 P.3d at 1219.  It is not a case about garnishment, and not a case about a statutory penalty purportedly held by the judgment debtor. *See id.*  It is also <u>not a case about standing</u>. *See id.*  Plaintiff seems to be arguing that because this case is distinguishable from *AA Wholesale*, Plaintiff must somehow have standing.  (Brief of Plaintiff-Appellant at 25-28.)  That argument is simply incorrect.

<u>**STATEMENT CONCERNING ORAL ARGUMENT**</u>

The Appellee requests oral argument.  The Appellee believes that oral argument would assist the Court in adjudicating this matter because of the state law issues involved.

## **CONCLUSION**

The District Court's order denying Plaintiff's traverse of Hartman's answer to Plaintiff's garnishment must be affirmed. Because Hartman and Campaign entered into a valid settlement agreement, the security deposit at issue was properly setoff against unpaid rents, and there was nothing to garnish. While the Security Deposit statute does not apply to this commercial lease, the Court need not address that issue because of the parties' agreement. Even it that statute did apply, the purported treble damage claim could not be garnished because no seven day notice was given by the tenant, the one year statute of limitations expired, and such a claim is not a "chose in action" subject to garnishment.

Dated: August 11, 2023

OTTEN, JOHNSON, ROBINSON, NEFF & RAGONETTI, P.C.

By: */s/ Brad W. Schacht*
Brad W. Schacht
David T. Brennan
950 17th Street, Suite 1600
Denver, Colorado 80202
Telephone: (303) 825-8400
brad@ottenjohnson.com
dbrennan@ottenjohnson.com

*Attorneys for Garnishee-Appellee*

26

2922051.8

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

1.      This document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) this document contains 5,894 words.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman Font.

Date:  August 11, 2023          OTTEN, JOHNSON, ROBINSON,
                                 NEFF & RAGONETTI, P.C.

                               By:  */s/ Brad W. Schacht*
                                    Brad W. Schacht
                                    David T. Brennan
                                    950 17th Street, Suite 1600
                                    Denver, CO  80202
                                    Telephone:  (303) 825-8400
                                    brad@ottenjohnson.com
                                    dbrennan@ottenjohnson.com

                                    *Attorneys for Garnishee-Appellee*

27

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the following:

    (1)    all required privacy redactions have been made per 10th Cir. R. 25.5;

    (2)    if required to file additional hard copies, that the ECF submission is an exact copy of those documents;

    (3)    the digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program and are free of viruses.

Date:  August 11, 2023

OTTEN, JOHNSON, ROBINSON,
  NEFF & RAGONETTI, P.C.

By:  */s/ Brad W. Schacht*
     Brad W. Schacht
     David T. Brennan
     950 17th Street, Suite 1600
     Denver, CO  80202
     Telephone:  (303) 825-8400
     brad@ottenjohnson.com
     dbrennan@ottenjohnson.com

     ***Attorneys for Garnishee-Appellee***

2922051.8

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 11, 2023, I electronically filed the foregoing **GARNISHEE-APPELLEE'S ANSWER BRIEF** using the court's CM/ECF system which will send notification of such filing to the following:

Peter W. Ito
Ito Law Group LLC
1550 Larimer Street
Denver, CO  80202
peter@itolawgroup.com

*Attorneys for Plaintiff-Appellant*

Date:  August 11, 2023                OTTEN, JOHNSON, ROBINSON,
                                                  NEFF & RAGONETTI, P.C.


By:  *<u>/s/ Brad W. Schacht</u>*
               Brad W. Schacht
               David T. Brennan
               950 17th Street, Suite 1600
               Denver, CO  80202
               Telephone:  (303) 825-8400
               brad@ottenjohnson.com
               dbrennan@ottenjohnson.com

               ***Attorneys for Garnishee-Appellee***

2922051.8