Case No. 23-1125

IN THE

# United States Court of Appeals

### FOR THE TENTH CIRCUIT

◆◆◆

FIVE POINTS MANAGEMENT GROUP, INC.,

*Plaintiff-Appellant,*

—v.—

CAMPAIGN, INC., a Delaware Corporation; BRADLEY SEWELL, an individual,

*Defendants,*

HARTMAN ART STUDIOS, LLC,

*Garnishee-Appellee.*

———

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
HONORABLE R. BROOKE JACKSON
D.C. NO. 1:20-CV-02599-RBJ

## REPLY BRIEF FOR PLAINTIFF-APPELLANT

PETER W. ITO
ITO LAW GROUP PC
1550 Larimer Street
Denver, Colorado 80202
(720) 281-5294

*Attorneys for Plaintiff-Appellant*

August 30, 2023

**ORAL ARGUMENT NOT REQUESTED**

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ................................................... iii

ARGUMENT ..................................................................... 1

    I.    Garnishee's Argument That There Was No Debt Owing To Campaign Ignores The Evidence .................................... 1

        A. There Was No Agreement Between Garnishee and Campaign Agreeing to a Setoff ................................... 1

        B. There Was No Debt Owing by Campaign to Garnishee ........ 3

        C. Any Agreement, Oral or Written, Prospective or Retrospective, That Seeks to Waive the Protections of the Security Deposit Statute is Against Public Policy and Void by Virtue of C.R.S. § Section 38-12-103(7) .......... 5

    II.   Garnishees Fails to Address the Merits of the Arguments Raised by Plaintiff That Evidence that the Lease Is A Residential Lease ................................................... 6

        A. Because the Lease is Ambiguous, The District Court Was Required to Look Beyond the Four-Corners of the Lease to Determine the Intent of the Parties .................... 6

        B. The Term "Person" Includes a Corporation and the Definition of a "Dwelling Unit" Includes More Than Just a "Sleeping Place" ........................................... 7

    III.  Plaintiff Is Entitled To Treble Damages ............................ 8

        A. Treble Damages Are Available Under the Statute ............. 8

        B. Plaintiff's Claim for Treble Damages Was Ripe ................ 8

        C. The One-Year Statute of Limitation Has Not Expired .......... 8

PAGE

    D. The Social Utility of the Security Deposit Act Would be Undermined if Plaintiff Were Denied Treble Damages For Garnishee's Willful Violation of the Act ................... 10

CONCLUSION ............................................................. 11

# TABLE OF AUTHORITIES

PAGE(S)

**Cases**

*Dorman v. Petrol Aspen, Inc.*,
 914 P.2d 909 (Colo. 1996) ............................................................... 6

*Mishkin v. Young*,
 198 P.3d 1269 (Colo. App. 2008) ............................................ 10, 11

*Moreland v. Alpert*,
 124 P.3d 896 (Colo. App. 2005) ...................................................... 3

*Ryan v. Duffield*,
 899 P.2d 378 (Colo. App. 1995) ...................................................... 3

**Statutes**

C.R.S. § 2-4-401(8) ................................................................................ 7

C.R.S. § 38-12-103(1) .......................................................................... 11

C.R.S. § 38-12-103(3)(a) ..................................................................... 10

C.R.S. § 38-12-103(7) ............................................................................ 5

C.R.S. § 38-12-502(3) ............................................................................ 7

# ARGUMENT

I. **Garnishee's Argument That There Was No Debt Owing To Campaign Ignores The Evidence**

Garnishee proffers three arguments in support of the district court's finding that there was no debt owing by Garnishee to Campaign. The record does not support this conclusion.

   A. **There Was No Agreement Between Garnishee and Campaign Agreeing to a Setoff**

Garnishee continues to cling to the story that it reached an oral agreement with Campaign that resolved the application of the security deposit:

> As noted previously, after the termination of the Lease, Hartman and Campaign resolved the default in rent payments and the issue of Sewell's guarantee liability by agreeing that (a) Hartman would apply the security deposit to the unpaid rent, and (b) Hartman would not enforce Mr. Sewell's guarantee.

(*See* Answer Brief at p. 10)

Garnishee, however, never identifies the date the purported agreement was reached. The closest that Garnishee comes to identifying a date is this statement: "Accordingly, even if the resolution among Hartman, Campaign and Mr. Sewell had not been made at the time the Writ was served (which it clearly had)…." (*Id.* at p. 11) This statement is highly questionable for the reasons explained below.

The Garnishment was served on Garnishee on May 18, 2022. (App. Vol. I at A117)

1

Twenty-two (22) days before the Garnishment was served, Plaintiff deposed Hartman and Mr. Sewell on April 26 and 27, 2022, respectively. Neither testified that they had reached an agreement. (*See* Plaintiff-Appellant's Brief ("Opening Brief") at pp. 3-4; App. Vol. I at A220 (Tr. 92:23-25); App. Vol I at A221 (Tr. 137:7-12); App. Vol. I at A203 (Tr. 127:10-21)) For that matter, Hartman could not even recall if Campaign had posted a security deposit. (*Id.*; App. Vol. I at A220 (Tr. 92:23-25))

On June 20, 2022 (33 days after the Garnishment was served), Garnishee's own counsel was unable to identify the date when the agreement was reached. (*Id.* at p. 5; App. Vol. I at A227) This begs the question as to how counsel for Garnishee can now proclaim that an agreement had been reached at the time the Garnishment had been served.

Perhaps counsel for Garnishee learned of the date after June 20, 2022 but that still fails to explain why the affidavits submitted by Hartman and Mr. Sewell (both of which are dated February 6, 2023) fail to identify the date of their purported agreement. (App. Vol. II A252-A254 and A271-A274)

If, as Garnishee proclaims, an agreement had been reached by May 18, 2022, query why not one party to that purported agreement is able to identify the date the agreement was reached?

2

Neither Garnishee nor the district court has ever answered this important question. The date the agreement was reached is of the utmost importance since under Colorado law service of the Garnishment creates a lien on the funds sought to be garnished. *Moreland v. Alpert*, 124 P.3d 896, 902 (Colo. App. 2005); *Ryan v. Duffield*, 899 P.2d 378, 380 (Colo. App. 1995) ("As a judgment creditor, a garnishor becomes a lien creditor upon service of the writ of garnishment on the garnishee.").

**B.     There Was No Debt Owing by Campaign to Garnishee**

Citing to Section 10 of Colo. R. Civ. P. 103, Garnishee states that because "Campaign would have owed Hartman at least $67,500, which exceeded the $27,000 security deposit which would have been held by Hartman," Garnishee was "entitled to set off the full amount of the security deposit." (Answer Brief at p. 11)

This argument contradicts the record. As shown below, Garnishee elected to recover the unpaid rent owing by Campaign from Texture Supply.

In 2022, which is the first year of the Texture Supply lease, the base monthly rent was $34,487 and annually $413,844. (App. Vol. I at A170) In contrast, under the Campaign Lease, the monthly base rent for 2022 was $13,838 and annually $166,056. (App. Vol. I at A153, ¶) In other words, for renting the same exact property, Texture Supply's base rent in 2022 was $20,649 more per month than the base rent under the Campaign Lease and its annual rent in 2022 was $247,788

3

more than the annual rent under the Campaign Lease. For 2023, 2024 and 2025, the base monthly rent and the annual monthly rent were identical under both the Campaign Lease and Texture Supply Lease. (*Id.*)

The following chart is a comparison of both leases:

|  | **Campaign** | | | **Texture Supply** | | |
| --- | --- | --- | --- | --- | --- | --- |
|  | **Base Rent** | **Total Annual Rent** | | **Base Rent** | **Total Annual Rent** | **Differential** |
| **2022** | $13,838 | $166,056 | | $34,487 | $413,844 | **$247,788** |
| **2023** | $14,183 | $170,196 | | $14,183 | $170,196 | $0.00 |
| **2024** | $14,538 | $174,456 | | $14,538 | $174,456 | $0.00 |
| **2025** | $14,901 | $178,812 | | $14,901 | $178,901 | $0.00 |

Garnishee's claim that Campaign is indebted to it for "at least $67,000" is contradicted by the fact that Garnishee recovered this indebtedness from Texture Supply in 2022 by increasing the base monthly rent. Nowhere in its Answer Brief does Garnishee address, mention, discuss or explain this discrepancy.

Because Garnishee will recoup from Texture Supply the unpaid rent owing by Campaign, Garnishee's argument that Campaign was indebted to Garnishee is without merit.

4

### C. Any Agreement, Oral or Written, Prospective or Retrospective, That Seeks to Waive the Protections of the Security Deposit Statute is Against Public Policy and Void by Virtue of C.R.S. § Section 38-12-103(7)

Garnishee argues that prohibition on waiver that is set forth in C.R.S. § 38-12-103(7) is not applicable because (1) "there was no purported waiver in the Campaign Lease" and (2) "retrospective waiver is not prohibited by the Security Deposit Statute." (Answer Brief at pp. 12-13)

The fact that there was no written waiver in the Campaign Lease is of no import. Section 38-12-103(7) applies to any agreement "whether oral or written." (Addenda at 012)

As for the argument that a tenant can retroactively waive the protections of the Security Deposit Statute, Garnishee's argument ignores the plain and unambiguous language of § 38-12-103(7). Subparagraph (7) applies to any waiver agreement regardless of whether the waiver appears "in [the rental agreement] *or* [is] pertaining to a rental agreement (emphasis added)." The plain, unambiguous language of subparagraph 7 makes clear that is it applicable to any rental agreement regardless of whether the waiver is prospective or retrospective as long as the waiver "pertain[s] to a rental agreement."

5

**II.   Garnishees Fails to Address the Merits of the Arguments Raised by Plaintiff That Evidence that the Lease Is A Residential Lease.**

In its Answer Brief, Garnishee fails to address the argument raised by Plaintiff that (1) the Lease is ambiguous and, therefore, the district court was required to look at extrinsic evidence to determine the intent of the parties and (2) the definition of "person" includes a corporation.

**A.   Because the Lease is Ambiguous, The District Court Was Required to Look Beyond the Four-Corners of the Lease to Determine the Intent of the Parties**

According to Garnishee, the opening language of the Lease ("This Commercial Lease….") combined with language in paragraph 17 of the Lease ("The Property address may not be used or stated on government forms as a personal home, residence, or primary personal address.") support the district court's conclusion that the Lease was a "commercial lease between businesses." (Answer Brief at p. 15)

However, nowhere in its Answer Brief does Garnishee address the fact the lease also states that "[t]he Premises shall be used solely for a **furniture design showroom and residence**. (emphasis in original)"  (App. Vol. I at A155 (¶17))

Given this ambiguity, the district court was required to go beyond the four-corners of the Lease to determine the intent of the parties. *Dorman v. Petrol Aspen, Inc.*, 914 P.2d 909, 911-12 (Colo. 1996)

6

As set forth in Plaintiff's Opening Brief, the overwhelming evidence shows that the intent of the parties, as evidenced by the sworn testimony of Sewell and Hartman, clearly evidence that the property was both a residence and a place where Sewell would conduct Campaign's business.  *See* Opening Brief, Sec. II.

### B. The Term "Person" Includes a Corporation and the Definition of a "Dwelling Unit" Includes More Than Just a "Sleeping Place"

Arguing that the Security Deposit Act does not apply to the Lease, Garnishee merely regurgitates the same argument that it raised before the district court.

Garnishee fails to address the issue raised by Plaintiff that the term "person" can and does include a corporation. (Addenda 016 (C.R.S. § 2-4-401(8))

Garnishee further fails to address the argument raised by Plaintiff that the definition of "dwelling unit" is not nearly as narrow as the district court and Garnishee suggest.  Instead, Garnishee recycles the same argument it raised before the district court: "As a corporation, Campaign cannot sleep, and therefore has no 'sleeping place.'"  Nor does a corporation have a 'home' or a 'residence.'" (Opening Brief at p. 18)

However, as discussed in Plaintiff's Opening Brief, the definition of "dwelling unit" includes more than just a "sleeping place."  A "dwelling unit" also includes "a structure or the *part of a structure* that is used as a…*residence*…. (emphasis added)" (Addenda 013 (C.R.S. § 38-12-502(3))  By its express terms,

7

the property qualifies as a "dwelling unit" as the Lease expressly states that "[t]he Premises shall be used solely for a **furniture design showroom, and residence**…. (emphasis in original)" (App. Vol. I at A155 (¶17))  Further, the undisputed evidence in the form of the sworn testimony of Sewell and Hartman was that Sewell used part of the property as his residence.  (App. Vol. II at A434 (Tr. 18:15-17; 18:18-22; 18:23-25); A437-A438 (Tr. 112:7-113:20); A439 (Tr. 114:3-11); A440-A441 (Tr. 119:23-120:14); A455-A456 (Tr. 131:13-132:14))

### III. Plaintiff Is Entitled To Treble Damages.

Garnishee proffers four arguments in support of the district court's finding that Plaintiff was not entitled to treble damages.

#### A. Treble Damages Are Available Under the Statute

If this Court finds that the Security Deposit Statute applies to the Lease then Campaign was entitled to treble damages.

#### B. Plaintiff's Claim for Treble Damages Was Ripe

Plaintiff's claim for treble damages was ripe as it gave the required 7-day notice on June 21, 2022 (App. Vol. I at A230) and, for the reasons explained below, the one-year statute of limitations had not expired.

#### C. The One-Year Statute of Limitation Has Not Expired

Garnishee argues that the one year statute of limitations imposed on actions for statutory penalties started to run on December 18, 2020, when Campaign was

dissolved and the Lease was terminated. (Answer Brief at pp. 2, 20) Garnishee cites to no law that supports this proposition.

Further, Campaign was not dissolved on December 18, 2020. The Delaware Secretary of State has no record of Campaign's dissolution. (App. Vol. II at A369) A certificate issued by the Delaware Secretary of State on November 16, 2022, shows that Campaign is no longer in good standing under the laws of Delaware having become forfeited on October 2, 2021 for failure to obtain and designate a registered agent. (*Id.*)

Additionally, Mr. Sewell's own testimony contradicts Garnishee's statement that the Lease terminated on December 18, 2020. According to Mr. Sewell, he "never left the premises" and continued to "live" at the property even after Texture Supply entered into its lease with Garnishee: "I never left the premises. I lived there…. The principal, me, I still lived there, and I had an office there. Texture Supply had an office there." (App. Vol. II at A440-A441 (Tr. 119:23-120:14)) During questioning at his first meeting of creditors, which occurred on December 8, 2021, Mr. Sewell testified that since moving to Colorado he has continuously resided at the Larimer Street property. (App. Vol. II at A375)

Regardless, even assuming *arguendo* that the statute of limitations began to run on the termination of the Lease, the Lease did not terminate on December 19, 2020. Rather, the Lease terminated on August 1, 2021 when Texture Supply

9

leased the property from Garnishee (App. Vol. I at A169) and Plaintiff made demand pursuant to C.R.S. § 38-12-103(3)(a) on June 21, 2022 (App. Vol. I at A230), well within the one-year statute of limitations.

  **D.**  **The Social Utility of the Security Deposit Act Would be Undermined if Plaintiff Were Denied Treble Damages For Garnishee's Willful Violation of the Act**

Other than the cases cited in its Opening Brief, Plaintiff has not found any reported decisions that prohibit or preclude a judgment creditor's efforts to collect treble damages based on a garnishee's willful violation of C.R.S. § 38-12-103(3)(a).

As Plaintiff noted in its Opening Brief, the Security Deposit Act is to be liberally construed in favor of tenants and serves an important social utility: To change the future behavior of landlords who willfully withhold a security deposit from the tenant. As explained in *Mishkin v. Young*, 198 P.3d 1269, 1273 (Colo. App. 2008):

> The Act provides that "willful retention of a security deposit in violation of this section shall render a landlord liable for treble the amount of that portion of the security deposit wrongfully withheld from the tenant, *together with reasonable attorney's fees and court costs*…. § 38-12-103(3)(a). The General Assembly has directed that the Act "be liberally construed" to achieve its purposes. § 38-12-101, C.R.S. 2008. The supreme court has relied on this legislative declaration in construing the Act liberally in favor of tenants. *See Anderson v. Rosebrook*, 737 P.2d 417, 421 (Colo. 1987) (construing Act to require that "an exception be made to the common law

10

> doctrine of accord and satisfaction). (emphasis in original)

*Id.* at 1273.

Given that the Colorado General Assembly has directed that the Act be liberally construed in favor of tenants to achieve its purpose and that one of those purposes is to punish landlords who willfully withhold a security deposit, the legislative intent would be defeated if Garnishee's position were adopted and Plaintiff was not entitled to seek treble damages for Garnishee's willful violation of the Act.

## CONCLUSION

The district court's Order denying Plaintiff's Traverse should be reversed. This Court should find that (i) the Lease is a residential lease, (ii) the Security Deposit Act applies to the Lease, (iii) Garnishee violated C.R.S. § 38-12-103(1) by failing to deliver a written statement accounting for the security deposit, (iv) Campaign's right to treble damages for Garnishee's willful retention of the security deposit is a chose in action, and (v) Plaintiff has standing to garnish Campaign's right to treble damages.

Dated: August 30, 2023        **ITO LAW GROUP, P.C.**

By:  /s/ Peter W. Ito
    Peter W. Ito
    1550 Larimer Street, Suite 667
    Denver, CO 80202
    Telephone: (720) 281-5294
    Email: peter@itolawgroup.com

**Attorneys for Five Points Management Group, Inc.**

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

1.      This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7(B)(i) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) this document contains 2,371 words.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Time New Roman font.

Dated: August 30, 2023                    **ITO LAW GROUP, P.C.**


                                          By:  /s/ Peter W. Ito
                                               Peter W. Ito
                                               1550 Larimer Street, Suite 667
                                               Denver, CO 80202
                                               Telephone: (720) 281-5294
                                               Email: peter@itolawgroup.com

                                          **Attorneys for Five Points Management Group, Inc.**

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the following:

(1) all required privacy redactions have been made per 10th Cir. R. 25.5;

(2) if required to file additional hard copies, that the ECF submission is an exact copy of those documents;

(3) the digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program and are free of viruses.

Dated: August 30, 2023           **ITO LAW GROUP, P.C.**

By: /s/ Peter W. Ito
Peter W. Ito
1550 Larimer Street, Suite 667
Denver, CO 80202
Telephone: (720) 281-5294
Email: peter@itolawgroup.com

**Attorneys for Five Points Management Group, Inc.**

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 30th day of August 2023, I electronically filed the foregoing using the court's CM/ECF system which will send notification of such filing to the following:

Brad W. Schacht
Otten Johnson Robinson Neff & Ragoinetti, P.C.
950 17th Street, Suite 1600
Denver, CO 80202
Email: bschacht@ottenjohnson.com

*Attorneys for Hartman Art Studios LLC*

I declare under penalty of perjury under the laws of the United States of America and the State of Colorado that the above and foregoing is true and correct.

Dated: August 30, 2023         **ITO LAW GROUP, P.C.**

By: /s/ Peter W. Ito
    Peter W. Ito
    1550 Larimer Street, Suite 667
    Denver, CO 80202
    Telephone: (720) 281-5294
    Email: peter@itolawgroup.com

**Attorneys for Five Points Management Group, Inc.**